1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  FAY AVENUE PROPERTIES, LLC,    )  Civil No. 11-2389-GPC(WVG)
    LA JOLLA SPA MD, INC.,         )
12                                 )  ORDER AFTER ORDER TO SHOW
                    Plaintiffs,    )  CAUSE HEARING RECOMMENDING
13                                 )  TERMINATING SANCTIONS AGAINST
                                   )  PLAINTIFF LA JOLLA SPA MD,
14  v.                             )  INC.
                                   )
15  TRAVELERS PROPERTY CASUALTY    )  REPORT AND RECOMMENDATION
    COMPANY OF AMERICA,            )  REGARDING DEFENDANT'S MOTION
16                                 )  FOR TERMINATING SANCTIONS
                    Defendant.     )  (DOC. NO. 49)
17                                 )
    _____)
18

19

20        On January 17, 2013, the Court held an Order To Show Cause

21  ("OSC") Hearing regarding why it should not recommend that terminat-

22  ing sanctions be imposed on Plaintiff La Jolla Spa MD, Inc. ("LJ

23  Spa"). Leon Campbell ("Campbell") appeared on behalf of Plaintiff LJ

24  Spa. Aaron Agness appeared on behalf of Travelers Property Casualty

25  Company of America ("Travelers"). Edward J. McIntyre and Meredith

26  King were sworn and testified at the OSC hearing.

27        The Court, having reviewed the history of this case, the

28  documents filed by counsel and by Mr. McIntyre, the testimony of Mr.

11cv2389

1    McIntyre and Ms. King and GOOD CAUSE APPEARING, HEREBY RECOMMENDS

2    THAT TERMINATING SANCTIONS BE IMPOSED AGAINST Plaintiff LJ Spa.

3                                    I

4                          FACTUAL BACKGROUND

5         On August 26, 2011, Plaintiffs filed this action against

6    Travelers alleging that Travelers committed breach of contract, bad

7    faith, fraud, and negligence.

8         On October 13, 2011, Travelers removed this action to this

9    Court.

10        On November 3, 2011, Travelers filed a Motion To Dismiss

11   Plaintiffs' Complaint.

12        On January 10, 2012, LJ Spa's first attorney filed a Motion

13   To Withdraw as attorney of record citing a breakdown in the

14   attorney-client relationship and irreconcilable differences. On

15   January 19, 2012, the Motion To Withdraw was granted.

16        On January 20, 2012, Plaintiff's current counsel, Campbell,

17   filed a Declaration on his own behalf ("Campbell Declaration"), in

18   which he represented to the Court that he was retained by Diane York

19   ("York"), LJ Spa's principal, to assist in finding substitute

20   counsel for Plaintiffs. Campbell stated: "I do not regard myself as

21   sufficiently experienced in insurance bad faith actions to substi-

22   tute myself as counsel," and "(I)t is the intention of the Plaintiff

23   to continue with diligence to retain new counsel." (Campbell

24   Declaration at 1, para. 2, 2, para. 4).

25        On January 26, 2012, the District Judge assigned to this case

26   recognized that the Campbell Declaration had been filed, but noted

27   that the Motion To Withdraw had already been granted, and rejected

28   the Campbell Declaration as moot.

1    On February 3, 2012, Campbell filed an "Appearance of
2    Counsel" on behalf of LJ Spa.

3    On February 28, 2012, the District Judge assigned to this
4    case granted Travelers' Motion To Dismiss with leave to amend. The
5    Order Granting The Motion To Dismiss noted that the Motion was
6    granted for Plaintiffs' failure to file opposition papers, pursuant
7    to S.D. Cal. Local Rule 7.1(f)(3)(c). The Order also noted that the
8    hearing on the Motion was extended for five weeks to accommodate
9    Plaintiffs' search for new counsel, but no new counsel entered an
10   appearance on behalf of Plaintiffs.

11   On March 26, 2012, Travelers filed an Answer to Plaintiffs'
12   Complaint.

13   On May 21, 2012, the Court conducted an Early Neutral
14   Evaluation Conference ("ENE"). The case did not settle at the ENE.
15   Therefore, the Court ordered, *inter alia*, pursuant to Fed. R. Civ.
16   P. 26, that a Joint Discovery Plan be submitted to the Court by June
17   21, 2012, that Initial Disclosures shall be completed by June 25,
18   2012, and that a Case Management Conference ("CMC") shall be held on
19   June 29, 2012.

20   On June 29, 2012, the Court conducted a CMC. Campbell did not
21   appear at the CMC on behalf of LJ Spa. However, LJ Spa construc-
22   tively participated in formulating the Joint Discovery Plan, but the
23   Joint Discovery Plan was not signed by Campbell. Instead, the Joint
24   Discovery Plan was signed by attorney Andrew P.P. Dunk ("Dunk") as
25   "Attorneys for Plaintiff La Jolla Spa MD, Inc." Although Dunk signed
26   as the attorney for LJ Spa, he did not (and has not) entered an
27   appearance in this action. Since neither Campbell nor Dunk appeared
28   at the CMC, the Court set an OSC hearing for July 31, 2012.

On July 12, 2012, Travelers propounded Interrogatories and Requests for Production of Documents on LJ Spa.

On July 17, 2012, Dunk filed a "Declaration of Counsel," ("Dunk Declaration") that explained that at the time he signed the Joint Discovery Plan, he "was in negotiations to become counsel of record for... Plaintiffs in this matter," but that he had "not yet been formally retained." (Dunk Declaration at paras. 3, 4).

On July 24, 2012, Travelers filed a Response to the OSC. In the Response, Travelers informed the Court that Plaintiffs' Initial Disclosures had not been served and noted Plaintiffs' violations of three Court orders: (1)failure to appear at the CMC, (2) failure to serve Initial Disclosures, and (3) failure to respond to the OSC.

On July 31, 2012, the Court held an OSC hearing for Plain-tiff's counsel's failure to appear at the CMC. At the OSC hearing, the Court ordered LJ Spa to serve its Initial Disclosures by August 3, 2012 and to serve responses to Travelers' interrogatories and Requests for Production of Documents by August 15, 2012.

On August 13, 2012, LJ Spa served on Travelers its responses to Travelers' discovery requests. However, the responses were simple, improper, boilerplate objections citing irrelevance of the requested information, and redundancy in that the information requested had been previously provided. Despite these responses, LJ Spa had not produced any documents in this litigation.[1/] Further, the discovery requests to which LJ Spa responded that the information sought was irrelevant, was clearly relevant to LJ Spa's claims in this action.

---

[1/]It appeared to the Court that prior to filing this action, LJ Spa had provided some documents to Travelers, but the documents were not identified.

4

1    For example, Travelers' Interrogatory No. 1 asks LJ Spa to
2    state the name and location(s) of all damages to the subject
3    property that LJ Spa contends was destroyed by Mitchel Goldman as
4    alleged in Paragraph 10 of the Complaint. LJ Spa's response was:
5    "Object. Irrelevant." (Declaration of Aaron Agness in Support of
6    Defendant Travelers Motion To Compel Regarding La Jolla Spa MD,
7    Inc.'s Responses to Discovery Requests, "Agness Dec.," Exhibit 4 at
8    36-37). Travelers' Interrogatory No. 2 asks LJ Spa to state the
9    dollar amount of the damage it contends was caused by Mitchel
10   Goldman. LJ Spa's Response was "Object. Irrelevant." (Agness Dec.,
11   Exh. 4 at 37). Travelers' Request for Production of Documents No. 3
12   asks LJ Spa to produce all documents that relate to, or evidence the
13   dollar amount of the physical damage to the subject property as a
14   result of the incident. LJ Spa's response was "Object as Irrele-
15   vant." Travelers' Request for Production of Documents No. 6 asks LJ
16   Spa to produce all documents that refer to, relate to or evidence
17   the amount of damage LJ Spa sustained as a result of the incident.
18   LJ Spa's Response was : "Object, redundant, already provided."
19   (Agness Dec., Exh. 2 at 18).

20   On August 21, 2012, the Court held a Status Conference in
21   this action. At the Status Conference, the Court ordered counsel, by
22   August 31, 2012, to meet and confer regarding LJ Spa's responses to
23   Travelers' discovery requests. Also, the Court ordered LJ Spa to
24   provide to Travelers specificity as to where allegedly previously
25   produced documents that were responsive to Travelers' discovery
26   requests could be located.

27   On August 23, 2012, LJ Spa's and Travelers' counsel met and
28   conferred by telephone regarding LJ Spa's discovery responses.

11cv2389

1    Campbell ended the telephone conference before the meet and confer
2    efforts were completed. Campbell told Travelers' counsel that he
3    would get back to Travelers' counsel. However, Campbell did not
4    reinitiate contact with Travelers' counsel nor did he supplement LJ
5    Spa's discovery responses.

6        On September 13, 2012, Travelers' counsel wrote to Campbell
7    regarding LJ Spa's outstanding discovery responses. Campbell did not
8    respond to this communication, nor did he provide supplemental
9    responses to Travelers' discovery requests.

10       On November 8, 2012, Travelers filed a Motion to Compel
11   Regarding Plaintiff's Discovery Requests, Request for Terminating
12   Sanctions or Money Sanctions.

13       On December 6, 2012, the Court held a hearing on Traveler's
14   Motion to Compel Regarding Plaintiff's Discovery Requests, Request
15   for Terminating Sanctions or Money Sanctions. At the hearing,
16   Campbell informed the Court that he and York needed access to LJ
17   Spa's documents in LJ Spa's offices in order to respond to Trav-
18   eler's discovery requests. On that same date, the Court issued an
19   Order stating that LJ Spa was to contact the Trustee of the Fay
20   Avenue bankruptcy estate, or whomever had the authority to allow LJ
21   Spa access to LJ Spa's offices (see below) for the purposes of
22   responding to Traveler's discovery requests. Also, the Court's Order
23   stated that on or before December 14, 2012, LJ Spa shall serve on
24   Travelers complete, substantial and meaningful responses, without
25   objections, to Traveler's interrogatories, and to produce to
26   Travelers the documents it had requested. Further, the Court's Order
27   stated that LJ Spa was to pay Travelers, by January 4, 2013, the sum
28   of $3,565.00 in sanctions for Travelers' fees and expenses in making

1  the Motion to Compel.[2] Additionally, in the Order, the Court warned

2  LJ Spa that its failure to abide by court orders, the Court's Local

3  Rules, and its discovery obligations in this case, may subject it to

4  dismissal of its case. (Order Granting In Part and Denying In Part

5  Defendant's Motion to Compel Regarding Plaintiff LJ Spa's Response

6  To Discovery Requests, And For Sanctions or Money Sanctions,

7  December 6, 2012).

8      On December 11, 2012, Edward J. McIntyre, filed a Declaration

9  on his own behalf In Relation To Pending Discovery Issues Between

10  Travelers Property Casualty Company of America and La Jolla Spa MD,

11  Inc. The Declaration states in pertinent part:

12      1. Mr. McIntyre represents BioFilm, Inc. ("BioFilm").

13      2. Fay Avenue (Plaintiff in this action) is a debtor in a

14  Chapter 7 bankruptcy proceeding. Fay Avenue and other Diane York-

15  related companies, are also parties to several actions in San Diego

16  Superior Court involving BioFilm.

17      3. BioFilm was permitted by the Bankruptcy Court to fore-

18  close, and did foreclose, on 7630 Fay Avenue, La Jolla, California

19  ("the building"). On October 19, 2012, the San Diego County Sheriff

20  evicted York and all of her companies from the building.

21      4. Until October 19, 2012, York and Campbell had unfettered

22  access to any document or other business records that were in the

23  building.

24      5. On October 31, 2012, York sought access to the building

25  from the San Diego Superior Court. York's request was supported by

26  her own Declaration that stated that some of her personal property

27

28  ────────────────

   [2]Neither LJ Spa nor Travelers has informed the Court whether the ordered
   sanctions were paid.

was in the building. The Declaration did not state that she needed access to the documents in the building to fulfill her discovery obligations in this case, or to comply with the Court's orders.

6. On November 7, 2012, Judge Pressman of the San Diego Superior Court entered a restraining order in BioFilm v. DYG Spa, et al., that disallowed York from entering the building.

7. On November 14, 2012, the Trustee in the Fay Avenue bankruptcy proceeding ("Trustee") filed a notice that he intended to abandon all of the personal property in the building, with exception of business records of the debtor either already in his possession or still on the premises.

8. On November 30, 2012, Campbell requested that York be permitted to enter the building to retrieve inventory in order to fill holiday orders.

9. On December 4, 2012, Campbell and York removed the inventory.

10. On December 8 or 9, 2012, by voice mail message, and on December 10, 2012 by telephone, Campbell informed Mr. McIntyre for the first time that the Court required LJ Spa (York) to provide discovery in this action.

11. Mr. McIntyre immediately informed Campbell that he (Campbell) was free to bring into the building a copy service to copy whatever documents he wished. Campbell informed Mr. McIntyre that York must have access to the building in order to identify the documents. Mr. McIntyre would not allow York access into the building (due to alleged vandalism believed to have been committed by York and Judge Pressman's Order of November 7, 2012). Mr. McIntyre informed Campbell that *he* could have immediate access to

11cv2389

the building to identify the relevant documents for copying, or in the alternative, he could copy all the documents that remain in the building.

12. On December 11, 2012, at an *ex parte* proceeding in the San Diego Superior Court (Judge Pressman), Campbell raised the issue of York's access to the building. Judge Pressman ordered that York was not permitted to enter the building, but that Campbell and a copy service may enter the building and copy whatever documents he wished to copy.

13. From mid-October 2012 to December 10, 2012, Campbell did not inform Mr. McIntyre that he or York needed access to the documents in the building to fulfill discovery obligations in this action.

On December 18, 2012, Travelers' counsel filed a Declaration on behalf of Travelers. The Declaration states in pertinent part:

1. On December 11, 2012, Campbell sent him an email asking for an extension of time to produce the documents requested by Travelers.

2. Campbell indicated that he and York "were experiencing difficulty in gaining access to the building so that (his client) can respond further to the requests for documents and to the interrogatories."

3. No further responses to Travelers' discovery requests were served.

On December 21, 2012, the Court set an OSC hearing for LJ Spa to explain why terminating sanctions should not be recommended against it.

11cv2389

1    On January 10, 2013, Campbell filed an Opposition to the OSC.

2    The Opposition stated that it is essential that York examine the

3    books and records of LJ Spa (in the building) in order to respond to

4    Travelers' requested discovery because only she has the ability to

5    find the records that she needs to respond. Also, the Opposition

6    states that efforts to see the books and records (in the building)

7    have been made in good faith.

8    On January 11, 2013, Mr. McIntyre filed a Supplemental

9    Declaration. The Supplemental Declaration states in pertinent part:

10    1. York and Campbell would have this Court believe that

11    BioFilm, its counsel, and Judge Pressman somehow prevented LJ Spa

12    from complying with its discovery obligations in this case. The

13    impression they attempt to create is false.

14    2. On October 8, 2012, the Trustee filed a Motion For a Turn-

15    Over Order.

16    3. As soon as BioFilm learned that the Trustee sought a turn-

17    over order of Fay Avenue's documents, it informed Campbell by letter

18    of October 26, 2012, that without the Trustee's approval, BioFilm

19    would not allow anyone to remove documents from the building before

20    the November 29, 2012 hearing date on the Trustee's Motion.

21    4. After the October 26, 2012 letter, neither Campbell, York,

22    nor anyone else on behalf of LJ Spa asked for access to the

23    documents in the building in order to make copies, as opposed to

24    physically removing the documents, to comply with discovery

25    obligations in this case, or for any other reason.

26    5. On November 1, 2012, York, in the San Diego Superior Court

27    (Judge Pressman), sought an *ex parte* return of her personal property

28    in the building. BioFilm opposed York's application and sought a

11cv2389

restraining order to protect property in the building that may belong to the Fay Avenue bankruptcy estate. On November 7, 2012, Judge Pressman entered the restraining order sought by BioFilm.

6. At no time during the hearing before Judge Pressman did York or Campbell inform Judge Pressman that LJ Spa needed to make copies of documents in the building in order to comply with discovery obligations in this Court.

7. On November 14, 2012, the Trustee filed a notice of proposed abandonment of all the personal property in the building, with the exception of Fay Avenue business and financial records that the Trustee had in his possession or that were located in the building. The notice advised that unless objection was made, the property would be abandoned back to Fay Avenue on December 14, 2012.

8. As soon as BioFilm received the Trustee's notice of proposed abandonment on November 14, 2012, it informed Campbell that BioFilm would open the doors of the building on December 15, 17 and 18, 2012 for anyone claiming ownership of personal property in the building to remove it.

9. On December 11, 2012, a hearing was held before Judge Pressman. Campbell informed Judge Pressman that he would not be able to identify any document that needed to be copied for production in this case.

10. Judge Pressman informed Campbell to copy all of the documents.

11. Immediately after the December 11, 2012 hearing, Mr. McIntyre wrote to Campbell asking for information regarding when he or his copy service wanted access to the building. Campbell did not respond.

12.   On December 12, 2012, Mr. McIntyre wrote to Campbell asking him to identify the moving company York and her companies, including LJ Spa, would be using on December 15, 17 and/or 18, 2012 to remove from the building her and her companies' personal property. Campbell did not respond.

13. Other third parties, including two of Campbell's clients, made arrangements to remove their property from the building. BioFilm's counsel gave them access to do so.

14. At no time did Campbell, York, or anyone else on behalf of York or LJ Spa seek access to copy, or after December 15, 2012 to remove, any documents in the building.

15.  All of LJ Spa's documents in the building were in a single location, a second floor office suite. The documents in other locations in the building had been moved to that office suite. There was a copy machine in the office suite.

On January 17, 2013, the Court held an OSC hearing regarding why terminating sanctions should not be recommended against LJ Spa. At the hearing, Mr. McIntyre testified consistently with his two Declarations. Ms. King testified that no one representing LJ Spa or York contacted her or her law firm to gain access to the documents in the Trustee's possession that may have been responsive to Travelers' discovery requests. Moreover, Ms. King testified that there was no legal impediment that would have prohibited her from giving Campbell or York access to the documents in the Trustee's possession. Had Campbell or York made a request for the documents, the only challenge, according to Ms. King, would have been logistical and as to that, she confidently testified that suitable arrangements could have been worked out.

11cv2389

1                                            II

2                                        ANALYSIS

3        Federal Rule of Civil Procedure 16(f) states in pertinent

4   part:

5            On motion or on its own, the court may issue just
             orders, including those authorized by Rule
6            37(b)(2)(A)(ii)-(vii) if a party...
                  (A) fails to appear at a ... pretrial
7                 conference;
                  ...
8                 (C) fails to obey a ... pretrial order.

9        Federal Rule of Civil Procedure 37(b)(2)(A) states in

10  pertinent part:

11           ... the court... may issue further just orders. They
             may include the following:
12           ...
             (v) dismissing the action or proceeding in whole or
13           in part...

14       If a party fails to obey a court order, the court may

15  sanction the disobedient party by striking pleadings, staying

16  further proceedings pending compliance, or terminating the action by

17  default or dismissal.  USA ex. rel. Wiltec Guam, Inc. v. Kahaluu

18  Constr. Co., Inc., 857 F.2d 600 (9th Cir. 1988)(terminating

19  sanctions upheld for, *inter alia,* failure to obey a court order to

20  produce documents); Toth v. TWA, 862 F.2d 1381 (9th Cir. 1988).

21  (terminating sanctions upheld for failure to obey a court order to

22  provide discovery).

23       Dismissal as a sanction is authorized only in "extreme

24  circumstances." Fjelstad v. American Honda Motor Co., Inc. 762 F.2d

25  1334, 1338 (9th Cir. 1985) (terminating sanctions upheld for failure

26  to obey a court order to provide discovery), Wiltec Guam, supra, at

27  603.  In order to warrant imposition of such a severe sanction, the

28

1    conduct of the disobedient party must be "due to wilfulness, bad

2    faith or fault." <u>Wiltec Guam</u>, <u>supra</u>, at 603.

3         The Ninth Circuit has identified five factors that a court

4    must consider before dismissing an action as a sanction:

5              (1) the public's interest in expeditious
               resolution of litigation;
6              (2) the court's need to manage its docket;
               (3) the risk of prejudice to the other party;
7              (4) the public policy favoring disposition of
                   cases on their merits; and
8              (5) the availability of less drastic sanctions.

9    <u>Leon v. IDX Systems</u>, 464 F.3d 951 (9th Cir. 2006)(terminating

10   sanctions upheld for willful destruction of evidence); <u>Adriana</u>

11   <u>International Corp. v. Thoren</u>, 913 F.2d 1406, 1412 (9th Cir. 1990)

12   (terminating sanctions upheld for failure to obey court orders to

13   provide discovery and to appear for a deposition); <u>Malone v. United</u>

14   <u>States Postal Service</u>, 833 F.2d 128, 130 (9th Cir. 1987) <u>cert. denied</u>

15   488 U.S. 819 (1988)(terminating sanctions upheld for failure to obey

16   court order); <u>Area 55, Inc. v. Celeras</u>, 2011 WL 1375307 at *2 (S.D.

17   Cal. 2011) (terminating sanctions for failure to obey court order);

18   <u>McReynolds v. Midland Credit Mgmt.</u>, 2011 WL 7477676 (S.D. Cal. 2011)

19   (terminating sanctions for failure to attend court-ordered hearing).

20        Where a court order is violated, the first two factors

21   support sanctions while the fourth factor argues against dismissal.

22   <u>Adriana International</u>, <u>supra</u>, at 1412; <u>Ferdik v. Bonzelet</u>, 963 F.2d

23   1258, 1261 (9th Cir. 1991) (terminating sanctions upheld for failure

24   to obey court order); <u>McReynolds</u>, <u>supra</u> at *2. The public's interest

25   in expeditious resolution of litigation always favors dismissal.

26   <u>Pagtalunan v. Galaza</u>, 291 F.3d 639, 642 (9th Cir. 2002) (terminating

27   sanctions upheld for failure to obey court order). Here, Plaintiff

28

1   has violated at least three court orders.[3/] Therefore, the third and

2   fifth factors are determinative of the result.

3        As to the third factor, a party suffers prejudice if the

4   disobedient party's actions impair the opposing party's ability to

5   go to trial or threatens to interfere with the rightful decision of

6   the case. Malone, supra, at 131. Failure to obey a court order is

7   considered sufficient prejudice. Here, Plaintiff's failure to appear

8   at court-ordered hearings, failure to comply with court orders in

9   this case and most importantly, failure to provide discovery,

10  constitute an interference with the rightful decision of this case.

11  Consequently, Travelers has been prejudiced by LJ Spa's failures.

12  Malone, supra, at 131; Area 55, supra at *2; McReynolds, supra at

13  *2.

14       LJ Spa's claim that it could not provide its Initial

15  Disclosures and complete responses to Travelers' discovery requests

16  because it did not have access to the documents it needed in order

17  to provide such responses is false, disingenuous and belied by the

18  facts presented to this Court.

19       From the time Travelers served its discovery requests on LJ

20  Spa on July 12, 2012 to October 19, 2012, LJ Spa had unfettered

21  access to the documents it claims it needed to review to properly

22  respond. Neither LJ Spa nor York many any attempt to retrieve the

23  documents that were in their exclusive possession, review those

24  documents in a deliberative fashion, and respond to Travelers'

25  discovery requests in a timely manner. Once the Sheriff evicted York

26

27       [3/] These Orders are: (1) Failure to abide by the Court's May 21, 2012 Order
     Setting Rule 26 Compliance; (2) Failure to abide by the Court's August 21, 2012
28   Order to meet and confer regarding its responses to Travelers' discovery requests;
     (3) failure to abide by the Court's December 6, 2012 Order to serve responses to
     Travelers' discovery requests.

11CV2389

1   and her companies from the building on October 19, 2012, the task of

2   responding to Travelers' discovery requests became more difficult,

3   but not impossible. Notwithstanding the earlier dereliction, with

4   the slightest bit of initiative and ingenuity, Campbell and York

5   could have met their discovery obligations simply by making a few

6   telephone calls to gain access to the documents. Instead, they did

7   absolutely nothing. Even when they were confronted with the spectre

8   of terminating sanctions after the December 6, 2012 hearing on

9   Traveler's Motion to Compel, they still did absolutely nothing.

10          Shortly after November 14, 2012, Campbell was informed that

11   the doors of the building where the documents were stored would be

12   open on December 15, 17 and 18, 2012 for anyone to remove personal

13   property. Neither Campbell, York, LJ Spa, nor anyone representing

14   them, examined or removed the documents on those dates.

15          On December 4, 2012, Campbell, York and LJ Spa were allowed

16   access to the building where the documents were stored to retrieve

17   some of LJ Spa's inventory. Neither Campbell, York, LJ Spa, nor

18   anyone representing them, reviewed the documents, nor removed them

19   at that time.

20          The fifth factor requires the court to consider the

21   availability of less drastic sanctions. The Ninth Circuit has

22   identified a three part analysis that courts must use to determine

23   whether the adequacy of less drastic sanctions has been properly

24   considered:

25                    (1) Did the court explicitly discuss the feasibility
                          of less drastic sanctions and explain why
26                        alternative sanctions would be inappropriate?
                      (2) Did the court implement alternative sanctions?
27                    (3) Did the court warn the disobedient party of the
                          possibility of dismissal before actually
28                        ordering dismissal?

1   _Adriana International_, _supra_, at 1412, _Malone_, _supra_, at 132;

2   _McReynolds_, _supra_ at \*2.

3       Here, it is evident that no less drastic sanction other than

4   dismissal is appropriate in this case. LJ Spa has already failed to

5   comply with court orders regarding court appearances and appears to

6   have abandoned any interest in prosecuting this litigation by

7   failing, on numerous occasions, to either copy the documents in the

8   building or remove them, so it could comply with its discovery

9   obligations and court orders in this case.   Moreover, the Court

10  warned LJ Spa that its failure to appear at court ordered hearings

11  and its failure to abide by the Court's Local Rules and its

12  discovery obligations in this case may subject its case to dis-

13  missal. "A court's warning to a party that failure to obey the

14  Court's order will result in dismissal satisfies the 'consideration

15  of (less drastic) alternative (sanctions)." _Lance v. Adams_, 2011 WL

16  2312171 at \*2 (E.D. Cal. 2011), quoting _Ferdik_, _supra_, at 1262, and

17  _Malone_, _supra_, at 132-133.   Therefore, every justification exists

18  and all criteria necessary to impose the ultimate sanction of

19  dismissal have been met.

20      LJ Spa's disobedience to orders of this Court and its failure

21  to comply with its discovery obligations in this case, as detailed

22  above, leave the Court with no alternative but to RECOMMEND that the

23  District Court DISMISS LJ Spa's case in its entirety, with preju-

24  dice.

25               **CONCLUSION AND RECOMMENDATION**

26      After a review of the record in this matter, the undersigned

27  Magistrate Judge RECOMMENDS that the District Court DISMISS LJ Spa's

28  case in its entirety, with prejudice.

1    This Report and Recommendation of the undersigned Magistrate

2 Judge is submitted to the United States District Judge assigned to

3 this case, pursuant to the provision of 28 U.S.C. § 636(b)(1).

4    **IT IS ORDERED** that no later than <u>February 19, 2013</u> any party

5 to this action may file written objections with the Court and serve

6 a copy on all parties.  The document should be captioned "Objections

7 to Report and Recommendation."

8    **IT IS FURTHER ORDERED** that any reply to the objections shall

9 be filed with the Court and served on all parties no later than

10 <u>March 4, 2013</u>.  The parties are advised that failure to file

11 objections within the specified time may waive the right to raise

12 those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>,

13 951 F.2d 1153 (9th Cir. 1991).

14

15

16

17

18

DATED:  January 28, 2013

19

20

21  _____
    Hon. William V. Gallo
22  U.S. Magistrate Judge

23

24

25

26

27

28

11CV2389