# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAY AVENUE PROPERTIES, LLC., LA JOLLA SPA MD, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; AND DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. 3:11-cv-02389-GPC-WVG <br><br> **ORDER DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S REQUEST FOR TERMINATING SANCTIONS** <br><br> **[ECF Nos. 49, 61.]** |

## INTRODUCTION

The instant case was brought by Plaintiffs Fay Avenue Properties, LLC ("Fay Avenue") and La Jolla Spa MD, Inc. ("LJ Spa") against Defendant Travelers Property Casualty Company of America ("Travelers") on August 26, 2011. (ECF No. 1.) On November 8, 2012, Travelers filed a Motion to Compel Regarding Plaintiff's Discovery Requests, Request for Terminating Sanctions or Money Sanctions. (ECF No. 49.) Pursuant to 28 U.S.C. § 636(b)(1), the Honorable William V. Gallo, United States Magistrate Judge ("Magistrate Judge"), submitted a Report and Recommendation ("Report") to this Court on January 28, 2013 recommending that terminating sanctions

be imposed against LJ Spa. (ECF No. 61.) For the reasons stated below, this Court **DECLINES TO ADOPT** the Magistrate Judge's Report and **DENIES** Travelers' Request for Terminating Sanctions.

# FACTUAL BACKGROUND[1]

In March 2002, Ms. Dianne York ("York") purchased the building at 7630 Fay Avenue ("the building") and opened LJ Spa along with her husband Dr. Mitchel Goldman ("Goldman"). (ECF No. 63.) LJ Spa "offered clients a full range of cosmetic and plastic surgery procedures in its accredited surgery suites, as well as cosmetic dermatology and spa treatments." (Id.) Multiple entities were created to own personal property such as inventory and to operate the spa, including Plaintiff La Jolla Spa MD, Inc., DYG Spa, Inc. (which managed the spa) and Plaintiff Fay Avenue Properties, LLC (which owned the building). (Id.)

In 2009, York and Goldman divorced. (Id.) As part of a stipulated judgment, York received LJ Spa as her separate property. (Id.) After the dissolution, Goldman allegedly "removed certain property of the spa, including medical equipment and the surgery suites." (ECF Nos. 63, 1.) This became a claim against Defendant Travelers. (ECF No. 1.) Travelers made an initial advance of $250,000 but eventually denied the claim. (Id.)

In late 2009, LJ Spa entered into an agreement with Peter Mann, MD in order to make up for the losses sustained by the Goldman theft. (ECF No. 63.) However, in March 2010, Mann allegedly "removed certain property, including the medical equipment, surgery suite, spa equipment, spa inventory, boutique equipment, spa boutique inventory, and intellectual property of La Jolla Spa MD." (Id.) This became a claim against CNA Insurance Company. (Id.)

Reduced income and business interruption caused a default in mortgage payments. (Id.) Biofilm, Inc., who had previously made a $360,000 loan to Fay

---

[1] The factual information in this section taken from LJ Spa's Objection to the Magistrate Judge's Report and Recommendation, (ECF No. 63.), is not disputed by Travelers as it pertains to the issues relevant to the discovery dispute between the parties in this case.

Avenue Properties, LLC, chose to accelerate the maturity of the loan and demanded that the loan be paid in full. (Id.) To avoid a foreclosure sale, a Chapter 11 bankruptcy proceeding was filed on June 8, 2011. (Id.) After the bankruptcy court lifted the stay, Biofilm acquired title to the building "subject to several suits by Fay Avenue Properties, LLC, including recorded Lis Pendens." (Id.)

**PROCEDURAL BACKGROUND[2]**

Plaintiffs filed this action in the Superior Court of the State of California, County of San Diego on August 26, 2011, alleging that Travelers committed breach of contract, bad faith, fraud, and negligence. (ECF No. 1.) The case was then removed to this Court pursuant to 28 U.S.C. § 1441. (Id.)

On January 10, 2012, LJ Spa's first attorney filed a Motion To Withdraw as attorney of record, citing a breakdown in the attorney-client relationship and irreconcilable differences. (ECF No. 17.) On January 19, 2012, the Motion To Withdraw was granted, and Plaintiffs were given until February 3, 2012 to retain substitute counsel. (ECF No. 23.)

On January 20, 2012, attorney Leon Campbell ("Campbell"), filed a Declaration on his own behalf, requesting that the Motion To Withdraw be denied, in which he represented to the Court that he was retained by Dianne York, LJ Spa's principal, to assist in finding substitute counsel for Plaintiffs. (ECF No. 26.) Campbell stated: "I do not regard myself as sufficiently experienced in insurance bad faith actions to substitute myself as counsel," and "It is the intention of the Plaintiff to continue with diligence to retain new counsel." (Id.) On January 26, 2012, the District Judge assigned to this case recognized that the Campbell Declaration had been filed, but noted that the Motion To Withdraw had already been granted, and rejected the Campbell Declaration as moot. (ECF No. 27.) LJ Spa did not find substitute counsel; Campbell himself filed an "Appearance of Counsel" on behalf of LJ Spa on February

---

[2] Unless otherwise noted, the information in this section is taken from the Magistrate Judge's Report and Recommendation. (ECF No. 61.)

3, 2012. (ECF No. 28.)

On April 10, 2012, Fay Avenue's bankruptcy was converted to a Chapter 7 proceeding and a new trustee was appointed. (ECF No. 64.) On or around June 4, 2012, the trustee hired the law firm Van Dyke & Associates, APLC ("VDA") as Special Litigation Counsel for Fay Avenue in this case. (Id.)

On May 21, 2012, the Court conducted an Early Neutral Evaluation Conference ("ENE"). The case did not settle at the ENE. Therefore, the Court ordered, *inter alia*, pursuant to Federal Rules of Civil Procedure Rule 26, that a Joint Discovery Plan be submitted to the Court by June 21, 2012, that Initial Disclosures shall be submitted by June 25, 2012, and that a Case Management Conference ("CMC") shall be held on June 29, 2012. (ECF No. 35.)

The Joint Discovery Plan was not signed by Campbell, but was instead signed by attorney Andrew P.P. Dunk ("Dunk"). Although Dunk signed as the attorney for LJ Spa, he did not (and has not) entered an appearance in this action. On June 29, 2012, the Court conducted the CMC. Since neither Campbell nor Dunk appeared at the CMC, the Court set an Order to Show Cause ("OSC") hearing for July 31, 2012. (ECF No. 38.) On July 17, 2012, Dunk filed a "Declaration of Counsel" that explained that at the time he signed the Joint Discovery Plan, he was "in negotiations to become counsel of record for . . . Plaintiffs in this matter," but that he had "not yet been formally retained." (ECF No. 40.) Dunk never became the attorney of record for LJ Spa.

Travelers propounded discovery upon LJ Spa on July 12, 2012. This request for discovery included interrogatories and requests for production of documents. At the OSC hearing on July 31, 2012, the Court ordered LJ Spa to serve its initial disclosures by August 3, 2012 and to serve responses to Travelers' Interrogatories and Requests for Production of Documents by August 15, 2012. (ECF No. 42.) On August 13, 2012, LJ Spa served on Travelers its responses to Travelers' discovery requests. However, the responses were, in the words of the Magistrate Judge, "simple, improper,

boilerplate objections citing irrelevance of the requested information, and redundancy in that the information requested had already been provided." (ECF No. 61.)

On August 21, 2012, the Court held a Status Conference. At the Status Conference, the Court ordered counsel, by August 31, 2012, to meet and confer regarding LJ Spa's responses to Travelers' discovery requests. (ECF No. 46.) Furthermore, the Court ordered LJ Spa, by August 31, 2012, to provide to Travelers responses with specificity as to where allegedly previously produced documents that were responsive to Travelers' discovery requests could be located. (Id.)

On August 23, 2012, LJ Spa's and Travelers' counsel met and conferred by telephone regarding LJ Spa's discovery responses. However, Campbell ended the telephone conference before the meet and confer efforts were completed, and LJ Spa's discovery responses were not supplemented.

On October 19, 2012, after Biofilm had acquired title to and foreclosed on 7630 Fay Avenue, the San Diego County Sheriff evicted York and all of her companies from the building. However, York's personal property and business documents pertaining to her companies remained in the building.

On November 7, 2012, Judge Pressman of the San Diego Superior Court entered a restraining order in <u>Biofilm v. DYG Spa, et al.</u>,[3] that disallowed York from entering the building. (ECF No. 51.)

Also on November 7, 2012, Meredith King ("King"), an attorney working for VDA, collected documents from 7630 Fay Avenue under the direct supervision of counsel for Biofilm. (ECF No. 68.) During this collection, King attempted to separate and identify documents belonging to Fay Avenue from documents belonging to other entities. (Id.) With respect to this collection, King reports that "documents were spread throughout the office and were commingled and unorganized. Along with counsel for Biofilm, I spent approximately 6.5 hours sorting these documents so as

---

[3] Biofilm v. DYG Spa, et al., is an unlawful detainer action in San Diego Superior Court, 37-2012-0004413-CL-UD-CTL.

only to remove those documents specifically labeled as belonging to Fay Avenue." (Id.)

On November 8, 2012, Travelers filed a Motion to Compel Regarding Plaintiff's Discovery Requests, Request for Terminating Sanctions or Money Sanctions ("Motion to Compel"). (ECF No. 49.)

On December 6, 2012, the Court held a hearing on Traveler's Motion to Compel. At the hearing, Campbell informed the Court that York needed access to LJ Spa's documents in the building in order to respond to Traveler's discovery requests, because only she had the capability to identify which documents were needed. The Court issued an Order stating that on or before December 14, 2012, LJ Spa shall serve on Travelers complete, substantial and meaningful responses, without objections, to Traveler's interrogatories, and to produce to Travelers the documents it had requested. Further, the Court's Order stated that LJ Spa was to pay Travelers, by January 4, 2013, the sum of $3,565.00 in sanctions for Travelers' fees and expenses in making the Motion to Compel. Additionally, in the Order, the Court warned LJ Spa that its failure to abide by court orders may subject it to dismissal of its case.

On December 8 or 9, 2012, by voice mail message, and on December 10, 2012 by telephone, Campbell informed Mr. Edward McIntyre ("McIntyre"), counsel for Biofilm, that the Court required LJ Spa to provide discovery in this action, and requested that York have access to the building in order to identify documents. (ECF No. 51.) McIntyre informed Campbell that he would not allow York access to the building, but that Campbell was free to bring into the building a copy service to copy whatever documents he wished. (Id.)

On December 11, 2012, Campbell raised the issue of York's access to the building at an ex parte proceeding in the San Diego Superior Court. (Id.) Judge Pressman ordered that York was not permitted to enter the building, but that Campbell and a copy service may enter the building and copy whatever documents he wished to copy. (Id.)

| | |
|---|---|
| 1 | On December 11, 2012, Campbell sent Travelers' counsel an email asking for an extension of time to produce the documents requested by Travelers. (ECF No. 52.) In this email, Campbell indicated that he and York "were experiencing difficulty in gaining access to the building so that [LJ Spa] can respond further to the requests for documents and to the interrogatories." (Id.) Travelers' counsel did not agree to an extension. (Id.)

On December 21, 2012, the Court set an OSC hearing for LJ Spa to explain why terminating sanctions should not be recommended against it. (ECF No. 53.) On January 10, 2013, Campbell filed an Opposition to the OSC. (ECF No. 55.) The Opposition reiterated that it was essential that York have access to the building to examine the books and records of LJ Spa in order to respond to Travelers' requested discovery because only she has the ability to find the records that LJ Spa needs to respond. (Id.) Also, the Opposition stated that efforts to gain access to the books and records in the building had been in good faith. (Id.) On January 17, 2013, the Court held the OSC hearing. (ECF No. 60.)

On January 28, 2013, Judge Gallo issued a Report and Recommendation, recommending that terminating sanctions be imposed on LJ Spa. (ECF No. 61.) LJ Spa filed its Objection to the Report and Recommendation on February 19, 2013, (ECF No. 63.), and Travelers filed its Reply to LJ Spa's Objection on March 4, 2013. (ECF No. 65.)

On February 11, 2013, Campbell inspected the building and discovered "ALL insurance papers were missing along with many other important documents and personal property belonging to [York]." (ECF No. 68-1, Ex. A.) On February 14, 2013, York sent an email to VDA and the Fay Avenue Chapter 7 Trustee, referencing attorney Meredith King's testimony at the January 17, 2013 hearing that "her office is holding the insurance papers among other companies paperwork unrelated to any bankruptcy proceedings" and asking for "the return of ALL La Jolla Spa MD insurance papers and also the papers belonging to my other companies." (Id.) |

On March 1, 2013, King received approval from the Trustee to release documents to York after VDA "conducted a review of the documents to determine whether they belonged to Fay Avenue and were relevant to Fay Avenue's claim against Travelers." (ECF No. 68.) There were 14 boxes of documents, and it took VDA over 135 hours to complete its review. (Id.) King reported that the analysis "revealed that some, if not all, of the documents my firm collected from 7630 Fay Avenue were duplicative of documents my firm received from Travelers or were irrelevant to this Case." (Id.) On April 18 and 19, 2013, York collected the documents from VDA. (Id.)

On May 20, 2013, LJ Spa filed supplemental answers to Travelers' Interrogatories and Requests for Production. (ECF Nos. 73, 74.)

On June 4, 2013, attorney Patrick M. Howe was substituted in as counsel of record for LJ Spa in place of Campbell. (ECF No. 76.) Howe filed a Supplemental Objection to the Report and Recommendation on June 6, 2013, (ECF No. 78), and Travelers filed its Reply on June 20, 2013. (ECF No. 79.)

### REQUEST FOR JUDICIAL NOTICE

The Court does not rely on any facts contained in the Travelers' request for judicial notice, (ECF No. 80), and therefore **DENIES AS MOOT** the request.

### LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, a district court "must make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); see also United States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989); United States v. Raddatz, 447 U.S. 667, 676 (1980). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

Here, the magistrate judge recommended that LJ Spa's case be dismissed in its

entirety, with prejudice, due to "LJ Spa's disobedience to court orders of this court and its failure to comply with its discovery obligations in this case." (ECF No. 61 at 17:20-24.) Federal Rule of Civil Procedure 37(b)(2) states that "if a party or a party's officer . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following: . . . (v) dismissing the action or proceeding in whole or in part." It is also "firmly established that the courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders." Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc. 682 F.2d 802, 806 (9th Cir. 1982). Dismissal sanctions under the court's inherent powers are subject to the same considerations as sanctions pursuant to Rule 37, and both types of cases may be used interchangeably for the purpose of citing authority. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990) (citing U.S. for Use and Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc. 857 F.2d 600, 603 n.5 (9th Cir. 1988)).

The court's power to dismiss a case for failure to obey a court order is limited by the requirements of due process. Phoceene, 682 F.2d at 806 (citing Hovey v. Elliot, 167 U.S. 409, 413-14 (1897)). "[B]ecause dismissal is so harsh a penalty, it should be imposed only in extreme circumstances." Wyle v. R.J. Reynolds Industries, Inc. 709 F.2d 585, 589 (9th Cir. 1983). Indeed, in order to warrant imposition of such a severe sanction the conduct of the disobedient party "must be due to wilfulness, fault, or bad faith." Kahaluu, 857 F.2d at 603.

In addition, the Ninth Circuit has identified five factors that a court must consider before dismissing an action as a sanction:

(1) the public's interest in expeditious resolution of litigation;

(2) the court's need to manage its docket;

(3) the risk of prejudice to the other party;

(4) the public policy favoring disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

Malone v. U.S. Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (quoting Thompson v. Housing Auth. of City of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986)).

Where a court order is violated, the first two factors support terminating sanctions while the fourth factor argues against dismissal. Adriana, 913 F.2d at 1412; Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1991). Therefore, the third and fifth factors are determinative of the result. Adriana, 913 F.2d at 1412.

**DISCUSSION**

In order for the Court to be justified in adopting the Magistrate Judge's Report and dismissing LJ Spa's case in its entirety, with prejudice, the Court must find in its de novo review that LJ Spa disobeyed the Magistrate Judge's order willfully or in bad faith, that Travelers has been sufficiently prejudiced by LJ Spa's disobedience, and that lesser sanctions would be inadequate. Because there is insufficient evidence to show that LJ Spa has acted in bad faith, and Travelers has not been prejudiced by LJ Spa's disobedience, dismissal sanctions would be inappropriate in this case and the Court therefore declines to adopt the Magistrate Judge's Report.

**I.  Bad Faith**

In its original Objection, LJ Spa argued that dismissal sanctions would be inappropriate because: it was impossible for LJ Spa to respond to Travelers discovery requests without York having personal access to the building, the Magistrate Judge's December 6, 2012 order allowing only eight days for LJ Spa to supplement its discovery responses was unrealistic given the fact that the books and records of different entities were voluminous and commingled, LJ Spa's request to modify the temporary restraining order to allow York personal access to the building to amend its discovery responses and the email subsequently sent to Travelers requesting an extension of time to respond to discovery show that LJ Spa acted in good faith in its attempt to comply with the Magistrate Judge's order, and difficulties with the unlawful detainer action and retaining adequate counsel had a substantial effect on LJ Spa's inability to amend its discovery responses on time. (ECF No. 63.) In its Supplemental

Objection, LJ Spa reasserts that LJ Spa has made good faith efforts to comply with the Magistrate Judge's order, and argues that new evidence, such as the fact that the documents needed to respond to discovery had been in the possession of VDA and the amount of time it took VDA to review the documents and release them to York, further renders dismissal sanctions inappropriate. (ECF No. 78.)

Travelers, on the other hand, argues both in its original Reply to LJ Spa's Objection, (ECF No. 65), and its Reply to LJ Spa's Supplemental Objection, (ECF No. 79), that LJ Spa acted in bad faith and wilfully disregarded its discovery obligations. Travelers argues that dismissal sanctions are warranted because (1) LJ Spa did not attempt to provide proper responses before York and her companies were evicted from the building; (2) LJ Spa refused to send anyone other than York into the building after the eviction even though someone else could have entered the building and copied all the documents; (3) the Magistrate Judge's order allowing LJ Spa eight days to amend its responses was realistic in light of the overall amount of time LJ Spa has had to respond to discovery; (4) the unlawful detainer action is irrelevant; (5) LJ Spa's reliance on the advice of counsel does not excuse its failure to meet its discovery obligations; and (6) the new evidence demonstrates what LJ Spa would have found out much earlier if LJ Spa had made truly good faith efforts to comply with the Magistrate Judge's order.

Although a finding of gross negligence has been held as sufficient to support the imposition of terminating sanctions, Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc., 144 F.R.D. 379, 384 (C.D. Cal. 1992), the requirements of due process usually limit such an extreme sanction to cases where bad faith has been shown through the disobedient party's intentional conduct. See, e.g., Keithley v. Home Store.com, Inc., C-03-04447 SI (EDL), 2008 WL 3833384 (N.D. Cal. Aug. 12, 2008) (declining to impose terminating sanctions where defendants' grossly negligent discovery misconduct, which included spoilation of evidence, was described as "among the most egregious [the court] has seen," because "there is no evidence that [defendants] engaged in

deliberate spoilation, and dismissal is the most extreme sanction"); Lewis v. Ryan, 261 F.R.D. 513, 522 (S.D. Cal. 2009) (holding that dismissal was not warranted as a sanction for defendant prison's spoilation of evidence because although prison acted recklessly and was "at fault" in allowing documents to be destroyed, there was no evidence that the documents were destroyed in order to prevent plaintiff inmate from receiving them); Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) (affirming the district court's finding that plaintiff acted in bad faith and dismissal sanctions were warranted, where plaintiff, who was suing his employer, deleted incriminating files from his computer and wrote a program specifically designed to erase all evidence of those files from his computer, even after receiving a letter warning him to take care to preserve all data on the computer). Indeed, even willful disobedience may not always constitute the type of extreme conduct necessary to support dismissal sanctions. See Fjelstad v. Am. Honda Motor Co., Inc., 762 F.2d 1334, 1343 (9th Cir. 1985) (holding that although defendant violated a court order when it willfully delayed the identification of individuals with knowledge relevant to plaintiff's case, the district court abused its discretion in granting partial summary judgment against defendant because the circumstances of the case were not so extreme as to warrant such a severe sanction); Phoeceene, 682 F.2d at 806 (holding that dismissal sanctions were not warranted, even though defendant willfully deceived the court by claiming that he was too ill to attend the trial on a certain date, because the deception was "wholly unrelated to the matters in controversy" and did not allow the court to reasonably infer from the defendant's conduct that his case was lacking in merit). Where "it has been established that failure to comply [with a court order] has been due to inability, and not to willfulness, bad faith, or any fault" of the disobedient party, dismissal sanctions are not warranted. Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 212 (1958).

Here, the fact that LJ Spa made efforts to comply with the Magistrate Judge's order demonstrates that LJ Spa has not acted in bad faith. On December 8 or 9, 2012,

Campbell contacted counsel for Biofilm and requested that York have access to the building in order to identify documents and allow LJ Spa to amend its discovery responses. (ECF No. 51.) When that request was denied on December 10, 2012, Campbell raised the issue of York's access to the building the next day at an ex parte proceeding in San Diego Superior Court, hoping to be able to modify the temporary restraining order in the unlawful detainer case to allow York to enter the building. (Id.) When that request was also denied, Campbell sought an extension of time from Travelers' counsel, but Travelers did not agree to an extension. (ECF No. 52.) Given that LJ Spa believed, until Campbell inspected the building on February 11, 2013, that the documents needed to respond adequately to Travelers' discovery requests were inside the building and that it would be impossible to amend its discovery responses without York having personal access to the building, LJ Spa's efforts demonstrate that LJ Spa genuinely attempted to comply with the Magistrate Judge's order. Although the issue of York's personal access to the building was ultimately irrelevant because the documents LJ Spa needed had been taken out of the building by VDA on November 7, 2012, there is no evidence that LJ Spa was purposefully ignorant as to where the documents were located. It may have been unwise, and even negligent, to continue to insist on York having personal access to the building rather than attempting to retrieve the documents through some alternative means, such as by hiring a copy service to copy all the documents, but LJ Spa's failure to do so does not amount to the type of bad faith necessary to support the imposition of terminating sanctions.

Furthermore, it is unclear whether LJ Spa would have been able to comply with the Magistrate Judge's December 6, 2012 order, even if LJ Spa had been aware that VDA had removed the documents at issue from the building. It took VDA over five months and over 135 hours to review the documents collected from the building, meaning that VDA were only able to release the documents to York on April 19, 2013, over four months after the magistrate judge's December 14, 2012 deadline to amend all discovery responses and almost three months after the magistrate judge issued his

Report. (ECF No. 68.) When asked by the Magistrate Judge at the January 17, 2013 hearing whether LJ Spa could have hired a copying company to copy the documents VDA had in its possession before VDA had finished its review, King said "I don't feel comfortable answering that affirmative yes." (ECF No. 60 at 39:17.) Indeed, even if LJ Spa knew that the documents were in VDA's possession and had immediate access to them, eight days may not have been enough time for LJ Spa to comply with the Magistrate Judge's order. There were over thirteen boxes of documents involved, with documents pertaining to the different entities originally controlled by York commingled and unorganized, and it took LJ Spa an entire month to file its amended responses once York collected the documents from VDA. (ECF Nos. 68, 73, 74.) Because circumstances beyond its control may have prevented LJ Spa from amending its discovery responses on time, dismissal sanctions are not warranted.

Finally, LJ Spa's prompt action upon learning the true location of the insurance documents also indicates that LJ Spa has not acted in bad faith.[4] When Campbell discovered that the documents were not inside the building, York contacted VDA and requested access to the documents. (ECF No. 68.) Once VDA had completed its review of the documents and York was able to pick them up, LJ Spa amended its discovery responses. (ECF Nos. 73, 74.) Travelers does not argue that LJ Spa has failed to produce any of the requested documents or failed to adequately amend its answers to Travelers' interrogatories.

LJ Spa's efforts to comply with the Magistrate Judge's order, the fact that circumstances beyond its control may have prevented LJ Spa from amending its discovery responses in a timely manner, and LJ Spa's actions upon learning the true location of the documents at issue all indicate that LJ Spa has not acted in bad faith. Therefore, terminating sanctions are not warranted in this case.

**II. Prejudice**

---

[4] Because these events took place after the Magistrate Judge issued his Report, the Magistrate Judge was not able to take them into account in his analysis.

In addition to the fact that there is insufficient evidence to indicate that LJ Spa has acted in bad faith, the five "dismissal factors" also weigh against the imposition of terminating sanctions because Travelers has not been prejudiced by LJ Spa's failure to amend its discovery responses on time.

In its original Objection to the Magistrate Judge's Report, LJ Spa argues that terminating sanctions would be inappropriate in this case because dismissal sanctions would place an extremely heavy burden on LJ Spa, whereas Travelers has not been prejudiced by the delay in discovery responses. (ECF No. 63.) In its Supplemental Objection, LJ Spa further argues that the new evidence, which shows that LJ Spa has amended its discovery responses and that Travelers already had copies of the documents at issue in the discovery dispute, renders dismissal sanctions completely inappropriate because Travelers has suffered no prejudice by LJ Spa's actions. (ECF No. 78.)

Travelers, on the other hand, argues that terminating sanctions would be justified because Travelers has been prejudiced by LJ Spa's disobedience. In its original Reply to LJ Spa's Objection, Travelers argues that LJ Spa's failure to meet its discovery obligations has caused "unexcused delay and frustration, and hearings and legal procedures made necessary only because of LJ Spa's bad faith and complete lack of compliance with Court orders and the law," and that the potential burden suffered by LJ Spa if its case was dismissed is irrelevant. (ECF No. 65.) In its Reply to LJ Spa's Supplemental Objection, Travelers argues that it has been prejudiced by LJ Spa's delay and its "pattern of egregious conduct," and that LJ Spa's argument that Travelers has not been prejudiced because Travelers already had the documents at issue is inadequate because LJ Spa was still required to provide some level of specificity in its discovery responses. (ECF No. 79.)

A party suffers prejudice sufficient to support the imposition of terminating sanctions where the disobedient party's actions impair the opposing party's ability to go to trial or threaten to interfere with the rightful decision of the case. <u>Malone</u>, 833

F.2d at 131.  Mere aggravation of a party's anxiety or an unsupported claim about the continued fading of witness memory does not suffice to show that a party has experienced actual prejudice as a result of a party's disobedience.  Raiford v. Pounds, 640 F.2d 944, 945 (9th Cir. 1981).  Increased attorneys' fees and other costs incurred as a result of a party's disobedience, absent any indication that the disobedience has interfered with the litigation of the case on its merits, are also insufficient.  In re Rubin, 769 F.2d 611, 618 (9th Cir. 1985).  On the other hand, "[w]here a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate."  Valley Engineers Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1058 (9th Cir. 1998) (affirming the district court's imposition of terminating sanctions, where defendant used delay tactics and violated court orders in order to conceal the existence of a memorandum unfavorable to its case, leading the district court to lack confidence "that the parties will ever have access to the true facts."); see also Fair Hous. of Marin v. Combs, 285 F.3d 899, 905-06 (9th Cir. 2002) (holding that the district court did not abuse its discretion in imposing terminating sanctions, where defendant's actions "prejudiced [plaintiff] by depriving it of any meaningful opportunity to follow up on the time-sensitive information or to incorporate it into litigation strategy").

Here, Travelers suffers no current prejudice because LJ Spa has remedied the deficiencies in its original discovery responses by amending its answers to Travelers' interrogatories and producing the requested documents.  Travelers does not argue that there has been any deficiency at all with respect to LJ Spa's amended responses, and there is no indication that any requested documents are still missing.  Travelers does not argue that LJ Spa has gained any sort of lasting advantage as a result of the delay or that it will now be any easier for LJ Spa to prevail in this case.  LJ Spa will still bear the burden of proof at trial, and the parties are in the same position as they were before the discovery dispute began.  Although a continuing delay in discovery may have represented prejudice to Travelers at the time the Magistrate Judge issued his Report,

the fact that LJ Spa has now amended its discovery responses and both parties now appear to be able to move forward with the litigation of this case on the merits indicates that Travelers is not currently suffering any prejudice caused by LJ Spa.

Furthermore, Travelers has suffered little if any prejudice throughout the discovery dispute, because the documents at issue were documents that Travelers already had in its possession. After VDA completed its review of the documents, King reported that "some, if not all, of the documents my firm collected from 7630 Fay Avenue were duplicative of documents my firm received from Travelers or were irrelevant to this Case." (ECF No. 68.) Travelers has not argued that it ever lacked any of the documents it requested from LJ Spa, and merely asserts that LJ Spa was obligated to provide Travelers with some level of specificity in responding to Travelers' discovery requests. But the fact that LJ Spa's initial discovery responses were inadequate does not indicate that Travelers has suffered any prejudice that impairs Travelers' ability to go to trial or threatens to interfere with the rightful decision of the case. Travelers notes that the Magistrate Judge found that Travelers had been prejudiced by LJ Spa's failure to provide discovery, but the Magistrate Judge's Report was written before LJ Spa amended its responses and before King filed her declaration indicating that the documents at issue in this discovery dispute were documents that Travelers already had. Travelers also argues that it has suffered "unexcused delay and frustration, and hearings and legal procedures" as a result of LJ Spa's delay in amending its discovery responses, but this does not amount to the type of prejudice needed to support the imposition of terminating sanctions.

Because LJ Spa has amended its discovery responses and Travelers was in possession of the documents at issue throughout the discovery dispute, the Court finds that Travelers has not been prejudiced by LJ Spa's disobedience and that terminating sanctions would be inappropriate.

## CONCLUSION

The extreme sanction of dismissal would be inappropriate in this case.

Therefore, the Court hereby **DECLINES TO ADOPT** the Magistrate Judge's Report and **DENIES** Travelers' Request for Terminating Sanctions. The parties are directed to contact the chambers of Magistrate Judge Gallo to schedule a case management conference.

**IT IS SO ORDERED.**

DATED: July 15, 2013

HON. GONZALO P. CURIEL
United States District Judge