WESTON & McELVAIN LLP
Aaron C. Agness, Esq. (State Bar No. 221943)
Patricia A. Daza-Luu, Esq. (State Bar No. 261564)
601 S. Figueroa St., Suite 2350
Los Angeles, CA 90017
Telephone: (213) 596-8000
Facsimile: (213) 596-8039
Email: aagness@wmattorneys.com
        pdaza-luu@wmattorneys.com

Attorneys for Defendant
**TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA**

Patrick M. Howe (State Bar No. 154669)
600 W. Broadway, Suite 1150
San Diego, CA 92101
Phone: (619) 232-4261
Email: pat@patrickhowelaw.com

Attorney for Plaintiff
**LA JOLLA SPA M.D, INC.**

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAY AVENUE PROPERTIES, LLC; LA JOLLA SPA MD, INC., | CASE NO. 3:11-cv-02389-GPC-WVG |
| Plaintiffs, | [Assigned for Discovery Matters to the Hon. William V. Gallo] |
| vs. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; and DOES 1 through 100, inclusive, | **JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING PLAINTIFF LA JOLLA SPA MD, INC.'S RSPONSES TO INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION** |
| Defendants. | |
| | Action Filed:        August 26, 2011 |
| | Action Removed:   October 14, 2011 |

-1-

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1

## JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTES

2

3   **INTERROGATORIES**

4   **Request No. 28:**  Describe with specificity (including the date, quantity, cost/amount, and from

5   what PERSON) YOUR purchases of Vitaphenol after Dan Close's sale, as discussed in YOUR

6   responses to Travelers' Interrogatory No. 27.

7   **Response to Request No. 28:**  Objection.  The interrogatory is overbroad and unduly

8   burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

9   compound.  The interrogatory is also vague.  Subject to and without waiving these objections, La

10  Jolla Spa MD, Inc. ("La Jolla Spa") responds as follows: Due to the passage of time, the theft of

11  paperwork on September 18, 2009 and March 10, 2010, and the 2012 eviction from the building,

12  La Jolla Spa is unable to provide all of the responsive information requested by the interrogatory.

13  La Jolla Spa can state that Vitaphenol was purchased after the 2008 sale of the line by the receiver

14  and that purchases were from Avidas.  La Jolla Spa also refers Travelers to the documents

15  produced in connection with La Jolla Spa's responses to Travelers' second set of requests for

16  production of documents.  Those documents show, among other things, the purchase of

17  Vitaphenol on January 22, 2009, April 8, 2009, June 17, 2009, and October 22, 2009.  The

18  documents also show that, during the month of January 2010, La Jollla Spa appears to have sold

19  14 units of the product.  Discovery is continuing.

20  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-5:8.[1]

21  **Plaintiff's Basis for Objection:**  See Attachment "B" at

22

23  **Request No. 29:**  State specifically which orders of Vitaphenol (as described in YOUR response

24  to the preceding interrogatory) were stolen in connection with the INCIDENT.

25  **Response to Request No. 29:**  Objection.  The interrogatory is overbroad and unduly

26

---

27  [1] The parties will each attach a separate pleading with their arguments in order to comply with Judge Gallo's Order of December 2, 2013 (Doc. 91), stating "[i]n the Joint Statement For Determination of Discovery Dispute, each party is limited to ten (10) pages, excluding exhibits."

28

1  burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

2  compound.  The interrogatory is also vague.  Subject to and without waiving these objections, La

3  Jolla Spa responds as follows: Due to the passage of time, the theft of paperwork on September

4  18, 2009 and March 20, 2010, and the 2012 eviction from the building, La Jolla Spa is unable to

5  provide all of the responsive information requested by the interrogatory.  La Jolla Spa can state

6  that Vitaphenol was purchased after the 2008 sale of the line by the receiver and that purchases

7  were from Avidas.  La Jolla Spa also refers Travelers to the documents produced in connection

8  with La Jolla Spa's responses to Travelers' second set of requests for production of documents.

9  Those documents show, among other things, the purchase of Vitaphenol on January 22, 2009,

10  April 8, 2009, June 17, 2009, and October 22, 2009.  The documents also show that, during the

11  month of January 2010, La Jolla Spa appears to have sold 14 units of the product.  Discovery is

12  continuing.

13  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-5:8.

14  **Plaintiff's Basis for Objection:**  See Attachment "B" at

15

16  **Request No. 30:**  Describe with specificity (including the date, quantity, cost/amount, and from

17  what PERSON) YOUR purchases of Obagi products to "replenish those inventories of … Obagi

18  products," as discussed in YOUR responses to Travelers' Interrogatory No. 27.

19  **Response to Request No. 30:**  Objection.  The interrogatory is overbroad and unduly

20  burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

21  compound.  The interrogatory is also vague.  Subject to and without waiving these objections, La

22  Jolla Spa responds as follows: Due to the passage of time, the theft of paperwork on September

23  18, 2009 and March 20, 2010, and the 2012 eviction from the building, La Jolla Spa is unable to

24  provide all of the responsive information requested by the interrogatory.  La Jolla Spa can state

25  that Obagi was purchased on March 30, 2009, June 27, 2009 and in August 2009.  La Jolla Spa

26  can also state that the product was purchased by physicians at the building in or after August 2009

27  and sold in the spa.  La Jolla Spa also refers Travelers to the documents produced in connection

28  with La Jolla Spa's responses to Travelers' second set of requests for production of documents.

1   Those documents show, among other things, that, during the month of January 2010, La Jolla Spa

2   appears to have sold 140 units of the product. Discovery is continuing.

3   **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-5:8.

4   **Plaintiff's Basis for Objection:**  See Attachment "B" at

5

6   **Request No. 31:**  State specifically which orders of Obagi (as described in YOUR response to the

7   preceding interrogatory) were stolen in connection with the INCIDENT.

8   **Response to Request No. 31:**  Objection.  The interrogatory is overbroad and unduly

9   burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

10   compound.  The interrogatory is also vague.  Subject to and without waiving these objections, La

11   Jolla Spa responds as follows: Due to the passage of time, the theft of paperwork on September

12   18, 2009 and March 20, 2010, and the 2012 eviction from the building, La Jolla Spa is unable to

13   provide all of the responsive information requested by the interrogatory.  La Jolla Spa can state

14   that Obagi was purchased on March 30, 2009, June 27, 2009 and in August 2009.  La Jolla Spa

15   can also state that the product was purchased by physicians at the building in or after August 2009

16   and sold in the spa.  La Jolla Spa also refers Travelers to the documents produced in connection

17   with La Jolla Spa's responses to Travelers' second set of requests for production of documents.

18   Those documents show, among other things, that, during the month of January 2010, La Jolla Spa

19   appears to have sold 140 units of the product. Discovery is continuing.

20   **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-5:8.

21   **Plaintiff's Basis for Objection:**  See Attachment "B" at

22

23   **Request No. 33:**  Describe in detail how YOU calculated YOUR value of $3 million, as detailed

24   in YOUR response to Interrogatory No. 6.

25   **Response to Request No. 33:**  Objection.  The interrogatory is overbroad and unduly

26   burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

27   compound.  The interrogatory is also vague.  The interrogatory also calls for information that is

28   protected from disclosure by the attorney work product privilege.  The interrogatory also calls for

-4-

1   expert opinion, which is not yet subject to disclosure and discovery.

2   **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-3:5, 5:9-8:9.

3   **Plaintiff's Basis for Objection:**  See Attachment "B" at

4

5   **Request No. 34:**  Describe in detail how, prior to the INCIDENT, the two operating rooms at the

6   SUBJECT PROPERTY brought in $400,000 a month, as stated in YOUR response to

7   Interrogatory No. 6.

8   **Response to Request No. 34:**  Objection.  The interrogatory is overbroad and unduly

9   burdensome and oppressive as to scope, subject matter and time.  The interrogatory is also

10  compound.  The interrogatory is also vague.  The interrogatory also calls for information that is

11  protected from disclosure by the attorney work product privilege.  The interrogatory also calls for

12  expert opinion, which is not yet subject to disclosure and discovery.

13  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-3:5, 5:9-8:9.

14  **Plaintiff's Basis for Objection:**  See Attachment "B" at

15

16  **REQUESTS FOR PRODUCTION**

17  **Request No. 53:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

18  purchases of Vitaphenol after Dan Close's sale, as discussed in YOUR response to Travelers'

19  Interrogatory No. 27.

20  **Response to Request No. 53:**  Objection.  The request is overbroad and unduly burdensome and

21  oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

22  are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

23  that are protected from disclosure by the attorney-client and attorney work product privileges.

24  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

25  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

26  possession, custody or control.  See accompanying CD.

27  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

28  9:21.

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1   **Plaintiff's Basis for Objection:**  See Attachment "B" at

2

3   **Request No. 54:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

4   purchases of Obagi products to "replenish those inventories of … Obagi products," discussed in

5   YOUR response to Travelers' Interrogatory No. 27.

6   **Response to Request No. 54:**  Objection.  The request is overbroad and unduly burdensome and

7   oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

8   are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

9   that are protected from disclosure by the attorney-client and attorney work product privileges.

10  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

11  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

12  possession, custody or control.  See accompanying CD.

13  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

14  9:21.

15  **Plaintiff's Basis for Objection:**  See Attachment "B" at

16

17  **Request No. 55:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

18  contention that because TRAVELERS did not timely pay YOUR claim, YOU went out of

19  business, as stated in YOUR responses to Interrogatory No. 6.

20  **Response to Request No. 55:**  Objection.  The request is overbroad and unduly burdensome and

21  oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

22  are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

23  that are protected from disclosure by the attorney-client and attorney work product privileges.

24  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

25  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

26  possession, custody or control.  See accompanying CD.

27  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

28  9:21.

-6-

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1    **Plaintiff's Basis for Objection:** See Attachment "B" at

2

3

4    **Request No. 56:** Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

5    contention that prior to TRAVELERS' failure to pay YOUR claim, YOUR business was valued at

6    $3 million, as stated in YOUR response to Interrogatory No. 6.

7    **Response to Request No. 56:** Objection. The request is overbroad and unduly burdensome and

8    oppressive as to scope, subject matter and time. Given this, the request also seeks documents that

9    are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

10    that are protected from disclosure by the attorney-client and attorney work product privileges.

11    The request is also compound. Subject to and without waiving these objections, La Jolla Spa

12    M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

13    possession, custody or control. See accompanying CD.

14    **Defendant's Reason to Compel Further Response:** See Attachment "A" at 1:2-2:17, 8:10-

15    9:21.

16    **Plaintiff's Basis for Objection:** See Attachment "B" at

17

18    **Request No. 57:** Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

19    contention that prior to the INCIDENT, the two operating rooms at the SUBJECT PROPERTY

20    brought in $400,000 a month, as stated in YOUR response to Interrogatory No.6.

21    **Response to Request No. 57:** Objection. The request is overbroad and unduly burdensome and

22    oppressive as to scope, subject matter and time. Given this, the request also seeks documents that

23    are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

24    that are protected from disclosure by the attorney-client and attorney work product privileges.

25    The request is also compound. Subject to and without waiving these objections, La Jolla Spa

26    M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

27    possession, custody or control. See accompanying CD.

28    **Defendant's Reason to Compel Further Response:** See Attachment "A" at 1:2-2:17, 8:10-

1   9:21.

2   **Plaintiff's Basis for Objection:**  See Attachment "B" at

3

4   **Request No. 58:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

5   contention that because TRAVELERS did not timely pay YOUR claim, DYG Spa Inc. went out

6   of business, as stated in YOUR response to Interrogatory No. 6.

7   **Response to Request No. 58:**  Objection.  The request is overbroad and unduly burdensome and

8   oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

9   are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

10  that are protected from disclosure by the attorney-client and attorney work product privileges.

11  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

12  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

13  possession, custody or control.  See accompanying CD.

14  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

15  9:21.

16  **Plaintiff's Basis for Objection:**  See Attachment "B" at

17

18  **Request No. 59:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

19  contention that prior to TRAVELERS' failure to pay YOUR claim, DYG Spa, Inc. business was

20  valued at $2 million, as stated in YOUR response to Interrogatory No. 6.

21  **Response to Request No. 59:**  Objection.  The request is overbroad and unduly burdensome and

22  oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

23  are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

24  that are protected from disclosure by the attorney-client and attorney work product privileges.

25  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

26  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

27  possession, custody or control.  See accompanying CD.

28  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

1  9:21.

2  **Plaintiff's Basis for Objection:**  See Attachment "B" at

3

4  **Request No. 60:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

5  contention that because TRAVELERS did not timely pay YOUR claim, York Goldman

6  Enterprises went out of business, as stated in YOUR response to Interrogatory No. 6.

7  **Response to Request No. 60:**  Objection.  The request is overbroad and unduly burdensome and

8  oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

9  are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

10  that are protected from disclosure by the attorney-client and attorney work product privileges.

11  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

12  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

13  possession, custody or control.  See accompanying CD.

14  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

15  9:21.

16  **Plaintiff's Basis for Objection:**  See Attachment "B" at

17

18  **Request No. 61:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

19  contention that prior to TRAVELERS' failure to pay YOUR claim, York Goldman Enterprises

20  business was valued at $1 million, as stated in YOUR response to Interrogatory No. 6.

21  **Response to Request No. 61:**  Objection.  The request is overbroad and unduly burdensome and

22  oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

23  are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

24  that are protected from disclosure by the attorney-client and attorney work product privileges.

25  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

26  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

27  possession, custody or control.  See accompanying CD.

28  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

1   9:21.

2   **Plaintiff's Basis for Objection:**  See Attachment "B" at

3

4   **Request No. 64:**  Any and all DOCUMENTS that refer to, relate to, or evidence YOUR

5   contention that because TRAVELERS did not timely pay YOUR claim, Fay Avenue Properties,

6   LLC lost its office building, as stated in Interrogatory No. 6.

7   **Response to Request No. 64:**  Objection.  The request is overbroad and unduly burdensome and

8   oppressive as to scope, subject matter and time.  Given this, the request also seeks documents that

9   are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and

10  that are protected from disclosure by the attorney-client and attorney work product privileges.

11  The request is also compound.  Subject to and without waiving these objections, La Jolla Spa

12  M.D., Inc. ("La Jolla Spa") will produce all non-privileged, non-objectionable documents in its

13  possession, custody or control.  See accompanying CD.

14  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 8:10-

15  9:21.

16  **Plaintiff's Basis for Objection:**  See Attachment "B" at

17

18  **REQUESTS FOR ADMISSION**

19  **Request No. 21:**  Admit that the alleged theft of equipment from the server room took place

20  sometime between the evening of August 31, 2009 and the morning of September 1, 2009.

21  **Response to Request No. 21:**  Objection.  The request is overbroad and unduly burdensome and

22  oppressive as to scope, subject matter and time.  The request is also vague as to the words

23  "alleged theft of equipment from the server room."  The request is also compound.  The request

24  also seeks information protected from disclosure by the attorney work product privilege.  Subject

25  to and without waiving these objections, La Jolla Spa responds as follows: Denied that items from

26  the server room on the first floor of the building were moved from the premises to another

27  location off the premises prior to September 18, 2009.

28  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 9:22-

1   10:28.

2   **Plaintiff's Basis for Objection:**  See Attachment "B" at

3

4   **Request No. 22:**  Admit that the alleged theft of computers and equipment from the Call Center

5   took place prior to September 18, 2009.

6   **Response to Request No. 22:**  Objection.  The request is overbroad and unduly burdensome and

7   oppressive as to scope, subject matter and time.  The request is also vague as to the words

8   "alleged theft of computers and equipment from the Call Center."  The request is also compound.

9   The request also seeks information protected from disclosure by the attorney work product

10  privilege.  Subject to and without waiving these objections, La Jolla Spa responds as follows:

11  Denied that items from the Call Center on the first floor were moved from the premises to another

12  location off the premises prior to September 18, 2009.

13  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 9:22-

14  10:28.

15  **Plaintiff's Basis for Objection:**  See Attachment "B" at

16

17  **Request No. 23:**  Admit that Dr. Goldman and/or his associates stole inventory and products from

18  the retail boutique and spa prior to September 18, 2009.

19  **Response to Request No. 23:**  Objection.  The request is overbroad and unduly burdensome and

20  oppressive as to scope, subject matter and time.  The request is also vague as to the words "Dr.

21  Goldman and/or his associates" and "inventory and products" [*sic*] from the retail boutique and

22  spa."  The request is also compound.  The request also seeks information protected from

23  disclosure by the attorney work product privilege.  Subject to and without waiving these

24  objections, La Jolla Spa responds as follows: Denied that items from the boutique and/or spa were

25  moved from the premises to another location off the premises prior to September 18, 2009.

26  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 9:22-

27  10:28.

28  **Plaintiff's Basis for Objection:**  See Attachment "B" at

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1

2   **Request No. 29:**  Admit that Dr. Richard Chaffoo performed surgeries at the surgery center at the

3   SUBJECT PROPERTY sometime between November 2009 and March 10, 2010.

4   **Response to Request No. 29:**  Objection.  The request is overbroad and unduly burdensome and

5   oppressive as to scope, subject matter and time.  The request is also vague as to the words

6   "surgery center."  The request also seeks information protected from disclosure by the attorney

7   work product privilege.  Subject to and without waiving these objections, La Jolla Spa admits that

8   Dr. Chaffoo performed one or more surgeries in one of the operation rooms in the surgical suite

9   prior to March 10, 2010.  La Jolla Spa denies each and every other fact contained in or implied by

10  the request.

11  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 9:22-

12  10:28.

13  **Plaintiff's Basis for Objection:**  See Attachment "B" at

14

15  **Request No. 30:**  Admit that Dr. Peter Mann performed surgeries at the surgery center at the

16  SUBJECT PROPERTY sometime between November 2009 and March 10, 2010.

17  **Response to Request No. 30:**  Objection.  The request is overbroad and unduly burdensome and

18  oppressive as to scope, subject matter and time.  The request is also vague as to the words

19  "surgery center."  The request also seeks information protected from disclosure by the attorney

20  work product privilege.  Subject to and without waiving these objections, La Jolla Spa admits that

21  Dr. Mann performed one or more surgeries in one of the operation rooms in the surgical suite

22  prior to March 10, 2010.  La Jolla Spa denies each and every other fact contained in or implied by

23  the request.

24  **Defendant's Reason to Compel Further Response:**  See Attachment "A" at 1:2-2:17, 9:22-

25  10:28.

26  **Plaintiff's Basis for Objection:**  See Attachment "B" at

27

28

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1

2    Dated:  June 13, 2014                          PATRICK M. HOWE, ESQ.

3

4                                                   By: s/ Patrick M. Howe, Esq. _____
                                                         Patrick M. Howe, Esq.
5                                                   Attorney for Plaintiff, La Jolla Spa MD, Inc.

6

7    Dated: June 13, 2014                           WESTON & McELVAIN LLP

8

9                                                   By:   s/ Patricia A. Daza-Luu _____
                                                          Aaron C. Agness
10                                                        Patricia A. Daza-Luu
                                                    Attorneys for Defendant
11                                                  TRAVELERS PROPERTY
                                                    CASUALTY COMPANY OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-

### ATTACHMENT "A"

## I.    INTRODUCTORY FACTS APPLICABLE TO THE JOINT STATEMENT

The instant litigation arises out of a first party commercial property insurance claim submitted to Defendant Travelers Property Casualty Company of America ("Travelers") by Plaintiffs Fay Avenue Properties, LLC ("Fay") and La Jolla Spa MD, Inc. ("LJS") (collectively, hereinafter, "Plaintiffs") arising out of a purported theft loss by Dr. Goldman. Plaintiffs' insurance claim was denied for multiple reasons, including misrepresentations made by Plaintiffs regarding claims of theft of certain product lines, specifically Vitaphenol and Obagi products. [Exh. "'1" to Declaration of Patricia A. Daza-Luu ("PDL Decl."), see also PDL Decl., ¶ 2.] Plaintiffs dispute Travelers' denial, and now bring causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing ("bad faith") against Travelers.

During discovery, LJS has claimed that Travelers' position regarding the Obagi and Vitaphenol products was incorrect, as these products were purchased by LJS before the subject loss and thereafter stolen. [Exh. "2" to PDL Decl., p. 28, see also PDL Decl., ¶ 3.] However, LJS made these claims without detailing these purchases, and more importantly, without detailing which and what portions of these purchases were purportedly stolen. [*See id.*] To obtain these details, Travelers served Interrogatories asking LJS to state what products it purchased before the loss, and which/what portion of these purchases were stolen in connection with the loss. [*See* Exh. "3" to PDL Decl., Interr. Nos. 28-31 (p. 32), *see also* PDL Decl., ¶ 4.]

Furthermore, LJS detailed that its breach of contract damages included business losses of $400,000 for its surgery rooms and also the loss of LJS, valued at $3 million. [*See* Exh. "4" to PDL. Decl., Supp. Resp. to Interrog. No. 6 (p. 40-41), *see also* PDL Decl., ¶ 5.] However, LJS never detailed how these figures were calculated. [*See* Exh. "4" to PDL Decl., Supp. Resp. to Interrog. No. 7 (p. 41), *see also* PDL Decl., ¶ 5.] To understand how LJS made these calculations, Travelers served interrogatories seeking details as to how LJS came to its $400,000 and $3 million figures previously provided. [*See* Exh. "3" to PDL Decl., Interrog. Nos. 33-34 (p. 32), *see also* PDL Decl., ¶ 5.] To all these Interrogatories, LJS responded with inappropriate objections and inadequate responses, including referencing ill-defined categories of documents,

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1  which did not provide any sufficient responsive information. [Exh. "5" to PDL Decl., Resp. 28-
2  34 (p. 72-77).]

3      In conjunction with the requests and interrogatories discussed above, Travelers also
4  served production requests related to the Vitaphenol, Obagi and damage calculations issues.
5  [Exh. "6" to PDL Decl., Interrog. Nos. 53-64 (p. 81-84).] To all these Requests for Production,
6  LJS responded with inappropriate objections and inadequate responses by stating that "non-
7  privileged, non-objectionable" documents will be produced without identifying which
8  "objectionable" documents are being withheld. [Exh. "7" to PDL Decl., Resp. Nos. 53-64 (p. 87-
9  94).]

10     Furthermore, there is uncertainty as to Plaintiffs' claims regarding the timing of the theft
11  of certain equipment, and further, whether surgeries were able to take place after the purported
12  loss. To confirm the timing of these alleged thefts and surgeries, Travelers served Requests for
13  Admission on LJS, seeking confirmation of specific date ranges. [*See* Exh. "8" to PDL Decl.,
14  Req. Nos. 21-23, 29-30 (p. 97-98).] To all these Requests for Admission, LJS responded with
15  inappropriate objections and re-worded responses that are not actually responsive to the
16  Requests. [Exh. "9" to PDL Decl., Resp. 21-23, 29-30 (p. 106-107, 110-111.]

17     Despite meet and confer requests to supplement the deficient responses, LJS has stood by
18  its responses and refuses to provide adequate information. [PDL Decl., ¶¶ 11-13, 15-16.]

19  **II.   TRAVELERS IS ENTITLED TO COMPLETE INTERROGATORY RESPONSES**
20      **A.   RESPONSES TO INTERROGATORIES MUST BE COMPLETE**

21     "It is well established that an answer to an interrogatory 'must be responsive to the
22  question. It should be complete in itself and should not refer to the pleadings, or to depositions or
23  other documents, or to other interrogatories, at least where such references make it impossible to
24  determine whether an adequate answer has been given without an elaborate comparison of
25  answers.'" *Smith v. Logansport Community School Corp.,* 139 F.R.D. 637, 650 (N.D.Ind.1991)
26  (citing 4A J. Moore, J. Lucas, *Moore's Federal Practice* § 33.25[1](2d ed.1991)); *see also United*
27  *States v. Dist. Council of New York City and Vicinity of United Broth. of Carpenters and Joiners*
28  *of America,* 1992 WL 188379 (S.D.N.Y.1992) ("Where the interrogating party makes a request for

1   an answer to certain questions, a [party] responds inappropriately by merely designating

2   documents because the interrogatory did not call for business records."); *Continental Illinois Nat.*

3   *Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 686 (D.Kan.1991) ("Incorporation by

4   reference to a deposition is not a responsive answer.").  *Scaife v. Boenne*, 191 F.R.D. 590, 594

5   (N.D. Ind. 2000).  It is especially improper to respond "by referring to another document," when

6   "the document referred to . . . does not answer the question posed." *Id.*

7       **B.     FACTS DIRECTLY RELATED TO LJS' CLAIMS MUST BE DISCLOSED**

8               **(INTERROGATORY NOS. 28-31)**

9       LJS disputes that it made misrepresentations regarding the theft of Vitaphenol and Obagi

10  products, claiming that the products were purchased prior to the loss and thereafter stolen.  It is

11  beyond doubt that Travelers is entitled to the information related to such property to evaluate LJS'

12  claims, including the date, quantity, cost/amount, from whom this property was purchased, as well

13  as which portion was stolen.  In fact, LJS does not object as to the relevance of the information.

14  Rather, LJS's objections "are text-book examples of what federal courts have routinely deemed to

15  be improper objections."  *See St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198

16  F.R.D. 508, 512-13 (N.D. Iowa 2000).  Uncannily, the plaintiff in *St. Paul* made the exact same

17  objections as LJS, and the *St. Paul* court systematically and conclusively establishes such

18  objections (made without any explanation) are completely improper:

19          The first objection asserted . . . is that it is oppressive, burdensome and harassing.

20          Plaintiffs assert these objections, however, without explaining, much less

21          substantiating, how [defendant's] request is oppressive, burdensome and

22          harassing.  *See Redland Soccer Club, Inc. v. Department of the Army,* 55 F.3d

23          827, 856 (3d Cir.1995) (stating that the mere statement by a party that the

24          interrogatory was overly broad, burdensome, oppressive and irrelevant is not

25          adequate to voice a successful objection to an interrogatory and that instead, the

26          party resisting discovery must show specifically how each interrogatory is not

27          relevant or how each question is overly broad, burdensome or oppressive)

28          (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*

-3-

1   894 F.2d 1482, 1485 (5th Cir.1990) (stating that the "party resisting discovery

2   must show specifically how . . . each interrogatory is not relevant or how each

3   question is overly broad, burdensome or oppressive" and then stating that "[w]e

4   see no reason to distinguish the standards governing responses to interrogatories

5   from those that govern responses to production requests.") (citation omitted).

6   Plaintiffs next object that [defendant's] document request is vague, ambiguous

7   and unintelligible.  Similarly, plaintiffs assert these boilerplate objections and fail

8   to substantiate how [defendant's] request is vague, ambiguous and unintelligible.

9   *Paulsen v. Case Corp.,* 168 F.R.D. 285, 289 (C.D. Cal.1996); *see also Burns v.*

10   *Imagine Films Entertainment, Inc.,* 164 F.R.D. 589, 592–93 (W.D.N.Y.1996)

11   (general objections that discovery request was overbroad, vague and unduly

12   burdensome were not sufficiently specific to allow court to ascertain

13   objectionable character of discovery request and were improper); *Chubb*

14   *Integrated Sys. Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 58

15   (D.D.C.1984) ("General objections are not useful to the court ruling on a

16   discovery motion.  Nor does a general objection fulfill [a party's] burden to

17   explain its objections.").  The plaintiffs' third objection to [defendant's] request is

18   based on the ground that it is overbroad and without reasonable limitation in

19   scope or time frame.  Once again, plaintiffs fail to offer any evidence or affidavits

20   in support of these objections. *See Etienne v. Wolverine Tube, Inc.,* 185 F.R.D.

21   653, 656 (D.Kan.1999) (stating that a party resisting discovery on the grounds

22   that a request is overly broad, including any objection to the temporal scope of the

23   request, has the burden to support its objection, unless the request is overly broad

24   on its face).

25   *Id.* at 512-13.

26   It is clear that LJS'objections are without substance and that LJS is required to provide the

27   requested information.  However, instead of providing the requested information, LJS refers

28   Travelers vaguely to "documents produced in connection with La Jolla Spa's responses to

1   Travelers' second set of requests for production of documents." Even if Travelers knew what

2   documents LJS was referencing, the interrogatory plainly demands a direct response that only LJS

3   can provide – namely, the date, quantity, cost/amount, and from what person these purchases were

4   made. Only LJS is knowledgeable of this information, as it is the one making the claim. LJS

5   purports to hide behind the age of this information to dodge providing a direct response. This is

6   disingenuous. If LJS can remember its self-serving explanation, then it can provide as much

7   information as it knows regarding the details of these Vitaphenol and Obagi purchases (and which

8   orders were stolen). At the very least, LJS can point to the specific documents (with bates

9   numbers) to which LJS refers for Travelers to easily glean this information.

10   **C.    FACTS AND ANALYSIS OF DAMAGE COMPUTATIONS MUST BE**

11   **DISCLOSED (INTERROGATORY NOS. 33 AND 34)**

12        LJS is under an obligation to disclose sufficiently detailed information regarding damages

13   and damage computations in both disclosures under the rule, as well as interrogatory responses:

14        [T]he plaintiff should provide more than a lump sum statement of the damages

15        allegedly sustained. . . . Moreover, the 'computation' of damages required by

16        [FRCP] Rule 26(a)(1)(C) contemplates some analysis; for instance, in a claim for

17        lost wages, there should be some information relating to hours worked and pay

18        rate. *See Bullard v. Roadway Exp.*, 3 Fed.Appx. 418, 420 (6th Cir. 2001)

19        (unpublished). *See also U.S. v. Rempel*, 2001 WL 1572190 (D.Alaska 2001) at *2

20        (government required to disclose computation of tax liability, the functional

21        equivalent of damages calculation in a tort case); *First Nat. Bank of Chicago v.*

22        *Ackerley Communications, Inc.,* 2001 WL 15693 at *6, n. 6 (S.D.N.Y.2001)

23        (calculation of damages requires more than merely setting forth figure

24        demanded); *Kleiner v. Burns,* 2000 WL 1909470 at *2 (D.Kan.2000) (defendant

25        is generally entitled to a "specific computation" of damages).

26        The Court concludes that Plaintiff should provide its assessment of damages in

27        light of the information currently available to it in sufficient detail so as to enable

28        each of the multiple Defendants in this case to understand the contours of its

-5-

1     potential exposure and make informed decisions as to settlement and discovery.

2     More specifically, in this case, Plaintiffs' aggregation of e.g. compensatory

3     damages for all claims, all contracts, and all defendants does not permit each

4     Defendant to know the extent of its liability since the SAC alleges breaches and

5     fraud with respect to six different contracts, each of them involving some

6     defendants but not others. Nor are the Defendants able to discern how the

7     compensatory damages claimed are distributed among the contracts. It would be

8     useful to know, for instance, for both discovery organization as well as for

9     settlement discussions, whether the bulk of damages are attributable to one or two

10     contracts. Nor are Defendants able to discern from Plaintiffs' initial disclosure

11     which portion of the compensatory damages are attributable to breach of contract,

12     fraud, and RICO claims. Because the merits analysis and assessment of

13     likelihood of success may vary among the claims, knowing what portion of the

14     damages are attributed to each claim would assist the parties in putting a

15     settlement value on the case. Providing this information, even if based as

16     tentative early information, would advance the litigation without imposing a

17     significant burden on the Plaintiffs. The Court notes the fact that Plaintiffs

18     disclose a very specific dollar amount ($42,284,757.00) for compensatory and

19     other damages indicates that they have already engaged in a detailed calculation

20     of damages.

21 *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221-22 (N.D. Cal. 2003);

22 *see also Mobile Storage Tech., Inc. v. Fujitsu Ltd.*, 2010 WL 1292545 at * 1 (N.D. Cal. 2010)

23 ("Even without an actual calculation of damages and an exact determination of the applicable

24 royalty rate, plaintiff MST shall provide the factual basis for its damages claim, the identification

25 of all facts to support its damages theories, and any factual information . . . ."); *Gaeta v. Perrigo*

26 *Pharm. Co.*, 2007 WL 3343043 at * 4 (N.D. Cal. 2007) ("As plaintiff has not properly responded

27 to the interrogatory (except to incorrectly refer to damages and to incorporate medical and billing

28 records and certain pleadings in the action), defendant BASF's motion to compel further response

1    to interrogatory no. 5 is granted.").

2          In other words, plaintiffs must reveal not only the damage figures, but also what the figure

3    is associated with, i.e. the type of damages, which claims or which causes of action, as well as the

4    factual basis for the damage calculation and the analysis for any computation of damages.

5          Furthermore, in certain circumstances, a failure to disclose adequate information regarding

6    damages can result in the court excluding the claims altogether. *See City and Cnty. of San*

7    *Francisco, supra,* 218 F.R.D. at 220 (citing *Gilvin v. Fire*, 2002 U.S. Dist. Lexis 15249 (D. D.C.

8    2002), *American Realty Trust, Inc. v. Matisse Partners, L.L.C.*, 2002 WL 1489543 (N.D. Tx.

9    2002), *Midwest Grain Products, Inc. v. Envirofuels Marketing, Inc.*, 1996 WL 445070 (D. Kan.

10   1996) and *Colombini v. Members of the Board of Dirs. of the Empire College School of Law*, 2001

11   WL 1006785 (N.D. Cal. 2001)).

12         During discovery, LJS disclosed business income losses of $3 million (the value of LJS) as

13   well as $400,000 a month for its operating rooms. [See Exh. "4" to PDL Decl., Response No. 6.]

14   However, LJS never provided detail as to how these numbers were calculated. [See Exh. "4" to

15   PDL Decl., Response No. 7.]  To understand how LJS came to these figures, which were disclosed

16   on May 20, 2013, Travelers served a second set of interrogatories, asking LJS to describe in

17   particularity how it came to these figures. [Exh. "3" to PDL Decl., Interrogatories 33, 34.]  Rather

18   than respond, LJS simply puts forth the same improper objections and claims that such damage

19   calculations are attorney work product or require expert opinion.  However, "Plaintiff should

20   provide its assessment of damages in light of the information currently available to it in sufficient

21   detail . . . ." *See City and Cnty. of San Francisco, supra,* 218 F.R.D. at 220.  Even if expert

22   opinion was required, LJS has obviously made an assessment of damages and must provide

23   sufficient detail at least in light of the information currently available, meaning without the alleged

24   future expert opinion.

25         With respect to LJS' work product privilege assertion, such objection cannot overcome the

26   basic obligation of the party to disclose the damage computations under Federal Rule of Civil

27   Procedure, Rule 26.  Further, LJS' assertion of work product privilege is inadequate, as Federal

28   Rule of Civil Procedure, Rule 26( b)(5) states, "[w]hen a party withholds information otherwise

-7-

1  discoverable by claiming that the information is privileged or subject to protection as trial-

2  preparation material, the party must . . . describe the nature of the documents, communications, or

3  tangible things not produced or disclosed--and do so in a manner that, without revealing

4  information itself privileged or protected, will enable other parties to assess the claim." Even if

5  the work product privilege actually applied to some materials, LJS is still under the obligation to

6  provide the remaining non-privileged material and responsive information.

7      It is clear that LJS' responses are improper. As LJS is the one claiming these damages,

8  only LJS can identify how they were calculated. LJS is required to provide further information as

9  to how it calculated its damage figures, the factual basis for the figures, and the analysis for the

10  computation of the figures.

11  **III.   TRAVELERS IS ENTITLED TO DOCUMENTS RELATED TO LJS' CLAIMS**

12  **AND DAMAGE CALCULATIONS**

13      The dispute involving LJS' responses to production requests is simple. After stating

14  boilerplate objections, LJS responds that it will produce all "non-privileged, non-objectionable

15  documents." Travelers requested that LJS omit the portion of the responses that say "non-

16  objectionable" or explain what "objectionable" documents are being withheld. LJS refused.

17      **A.   LJS' OBJECTIONS ARE INAPPROPRIATE (RFP NOS. 53-61 AND 64)**

18      As with LJS' responses to Travelers' Interrogatories, LJS' responses to Travelers'

19  Requests for Production of Documents contain the same inappropriate objections of overbroad,

20  oppressive, and compound. These objections fail for the same reasons discussed above. *See St.*

21  *Paul Reinsurance Co., Ltd.*, *supra,* 198 F.R.D. at 512-13. However, LJS includes another

22  objection based on relevance. Travelers' Requests seek documents that evidence LJS's claims and

23  contentions in this matter. Thus, the documents are directly relevant and LJS's objection to the

24  contrary is patently absurd. All responsive documents should be produced.

25      **B.   LJS' AGREEMENT TO PRODUCE "NON-OBJECTIONABLE"**

26      **DOCUMENTS IS EVASIVE (RFP NOS. 53-61 AND 64)**

27      LJS' responses state that it will produce all "non-privileged, non-objectionable

28  documents." However, it is impossible to determine what documents LJS has withheld from

-8-

1   production based on the inappropriate objections.  FRCP 26 states:

2        When a party withholds information otherwise discoverable by claiming that the

3        information is privileged or subject to protection as trial-preparation material, the

4        party must:

5        **(i)** expressly make the claim; and

6        **(ii)** describe the nature of the documents, communications, or tangible things not

7        produced or disclosed--and do so in a manner that, without revealing information

8        itself privileged or protected, will enable other parties to assess the claim.

9        The requirement to provide enough information for the other parties to assess the claim

10   should be equally applicable to withheld information based on objections.  Notably, LJS has never

11   served a privilege log in this litigation despite agreeing to do so per the Joint Discovery Plan.

12   While Travelers' privileged information has been the subject of motion practice, LJS's has not as

13   Travelers cannot deduce what has been withheld from LJS as "objectionable."  Travelers must

14   have an opportunity to review logs of what LJS is withholding and/or redacting, and raise these

15   issues with the Court if necessary.  In other words, Travelers must get the same courtesy LJS has

16   received for all "privileged" documents withheld.

17        Moreover, if the only "objectionable" documents being withheld are "privileged"

18   documents (for which there is no privilege log), it is redundant to say that "non-privileged, non-

19   objectionable" documents will be produced.  Yet, LJS refuses to omit the words "non-

20   objectionable" from its responses, suggesting that there is something further being withheld and/or

21   that LJS has unilaterally narrowed the production requests without any explanation as to how they

22   have been narrowed.  Consequently, amended straightforward responses should be compelled.

23   **IV.**    **LJS MUST RESPOND TO THE RFAs AS WRITTEN (RFA NOS. 21-23, 29-30)**

24        As with LJS's responses to Travelers' Interrogatories, LJS's responses to Travelers'

25   Requests for Admission contain the same inappropriate objections of overbroad, oppressive, and

26   compound.  These objections fail for the same reasons discussed above. *See St. Paul Reinsurance*

27   *Co., Ltd. v. Commercial Fin. Corp.*, *supra*, 198 F.R.D. at 512-13.  LJS includes another objection

28   based on vagueness.  However, "to aid the quest for relevant information parties should not seek

-9-

JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE RE LA JOLLA SPA MD, INC.'S
RESPONSES TO INTERROGATOREIS, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSION

1    to evade disclosure by quibbling and objection. They should admit to the fullest extent possible,

2    and explain in detail why other portions of a request may not be admitted." *Marchand v. Mercy*

3    *Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994).  Further FRCP 36 states:

4              If a matter is not admitted, the answer must specifically deny it or state in detail

5              why the answering party cannot truthfully admit or deny it. A denial must fairly

6              respond to the substance of the matter; and when good faith requires that a party

7              qualify an answer or deny only a part of a matter, the answer must specify the part

8              admitted and qualify or deny the rest. The answering party may assert lack of

9              knowledge or information as a reason for failing to admit or deny only if the party

10             states that it has made reasonable inquiry and that the information it knows or can

11             readily obtain is insufficient to enable it to admit or deny.

12             The Requests are not objectionable and even if they were, LJS must still respond to the

13   extent possible.  Although LSJ responds, the responses are evasive and do not address the

14   substance of the Requests.  For example, when Travelers requests LJS to admit that the alleged

15   theft of equipment from the server room took place between August 31, 2009 and September 1,

16   2009 (RFA No. 21), LJS responds: "Denied that items from the server room on the first floor of

17   the building were moved from the premises to another location off premises prior to September

18   18, 2009."  For whatever reason, LJS has responded in a manner that ignores the Request.  The

19   Request did not ask whether equipment from the server room was taken off the premises.  The

20   Request asked whether it was stolen during that timeframe.  If LJS' position is that the equipment

21   from the server room was stolen during that timeframe, but only taken to a different floor of the

22   subject property and not off the premises, it can admit accordingly.  However, it cannot skip

23   responding to the Request as written.  This manipulation of the Request is done in the exact same

24   manner to RFA Nos. 21 to 23.  As to RFA Nos. 29 and 30, LJS equally evades the Request, which

25   seeks an admission of surgeries being performed during a specific period, November 2009 to

26   March 11, 2010.  LJS responds that surgeries were performed prior to March 11, 2010, but fails to

27   specify whether they were during the requested period or not.  LJS has to at least respond to what

28   is requested instead of transmogrifying them into requests that they want to answer.

-10-

**PLAINTIFF LA JOLLA SPA'S BRIEF**

## 1.  BACKGROUND

As the court is aware, this is an insurance bad faith case arising out of a large commercial property theft loss. Despite the complexity of the case, the parties' competing positions are essentially as follows:

- Plaintiffs claim that there was a covered theft loss; defendant Travelers Property Casualty  Insurance Company of America ("Travelers") was required to help determine the amount of loss (i.e., the nature and value of the damaged or stolen property and the business interruption loss resulting therefrom); Travelers, due to the size and nature of the loss, instead chose to push the burden of determining the loss amount on to plaintiffs; consistent with that goal, Travelers showered plaintiffs with ongoing requests for documentation and appearances at examination under oath; and, in the meantime, due to the insurance company's refusal to advance money before a decision on the claim, plaintiffs lost their building to foreclosure and were forced to shut down.

- Travelers claims that there was no theft, but instead an authorized move-out by one of plaintiffs' former tenants; plaintiffs were required to provide information to establish the nature and amount of loss; plaintiffs were required to submit to as many examinations under oath as requested by the insurance company; and, when plaintiffs were no longer willing to do so, the claim was properly denied on grounds of lack of cooperation and purported misrepresentations made by plaintiffs' primary representative (Dianne York).

### 1.1.  The divorce.

There are two plaintiffs in this case: (1) La Jolla Spa MD, Inc. ("La Jolla Spa"), which operated a high-end medical spa and boutique in downtown La Jolla; and (2) Fay Avenue Properties, LLC ("Fay Avenue Properties"), which owned the two-story building in which La Jolla Spa was located. Both plaintiffs were named insureds

EXHIBIT "B" TO JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE

under the Travelers policy. Dianne York, the president of La Jolla Spa and sole member of Fay Avenue Properties, owned and controlled both entities.

The theft loss occurred on September 18, 2009. In August 2009, the month before the loss, Ms. York and her ex-husband, a physician, had finalized a contentious divorce that involved various related businesses operated out of the La Jolla Spa building. The ex-husband had operated a medical practice on portions of the second floor of the building. Ms. York and her businesses, including La Jolla Spa, had occupied the entire first floor and portions of the second floor. The second floor also contained a world-class surgical center in which cosmetic surgeries were performed. The general business plan involved the operation of all related entities under one roof—a one-stop shop where customers could obtain cosmetic procedures, supplies and services in one location.

The divorce negotiations concluded in early August 2009. Under the divorce judgment, approved by the parties on August 2, 2009, Ms. York was awarded all rights and interest in Fay Avenue Properties and La Jolla Spa. (Div. Judg., Exh. A to Howe decl., p. 3/ll. 7–9, p. 3/l. 28–p. 4/l. 3.) The ex-husband was awarded all rights and interest in his two medical companies. (*Id*. at p. 5/ll. 4–10.) With respect to *equipment* on the second floor of the building (i.e., not supplies, inventory or other non-equipment items), the ex-husband was awarded the equipment, with the exception of everything in the surgical center. Ms. York wanted sole ownership of the surgical center and any related equipment and supplies because she planned to improve upon the business model of La Jolla Spa with different physicians.[1] According to the judgment:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED
> that [ex-husband] take as part of [his two medical companies],
> the equipment on the second floor of La Jolla Spa M.D.,

---

[1]  In return for the surgical center, Ms. York gave up spousal support beyond December 31, 2009 and agreed the spousal support condition of the judgment could never be modified. (*Id*. at p. 7/ll. 6–14.)

EXHIBIT "B" TO JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE

> including but not limited to the liposuction equipment, *except for all equipment in the surgical suites*, which includes lights and anesthesia equipment and other fixtures attached to the building, and shall assume and hold [Ms. York] harmless from liabilities therefore. In the event [Ms. York] desires to obtain and/or retain laser equipment [which confirms lasers were located in the surgical suite] from any of the vendors of the Spa, she is free to deal directly with such lenders.

(*Id*. at p. 6/l. 27–p. 7/l. 5, emphasis added.)

The divorce judgment also required the ex-husband to vacate the building by December 31, 2009. (*Id*. at p. 3/ll. 9–11.) Pending the move out, he was required to pay rent of $34,000 per month (plus half of the utilities) commencing September 1, 2009. (*Id*. at p. 3/ll. 11–13.) If the ex-husband chose to move out earlier, the judgment required him to give at least 30 days notice. (*Id*. at p. 3/ll. 20–22.)

**1.2.   The theft loss.**

Unfortunately, the ex-husband did not abide by the terms of the judgment. Without notice, he arranged for numerous commercial moving trucks to move his medical practice from the La Jolla Spa building on September 18, 2009. In doing so, he removed not only items to which he was entitled under the divorce judgment, but he also took millions of dollars of business contents belonging to La Jolla Spa, including *everything* in the surgical center (i.e., equipment, furniture, fixtures, supplies, product). He also damaged the building.

Ms. York first attempted to remedy the situation through the divorce proceedings. Eventually, on or about January 25, 2010, she resorted to filing an insurance claim with Travelers. The claim involved the loss of business contents (equipment, supplies, art pieces, and inventory, including equipment in the surgical center), damage to the La Jolla Spa building, and loss of income suffered by the business as a result of the theft.

As an insurer, Travelers owed La Jolla Spa and Fay Avenue Properties several duties in connection with the investigation and evaluation of the insurance claim. These included the duty to tell its insureds about all policy benefits that might apply

to the theft loss (10 *Cal. Code Regs.* § 2695 .4; CACI 2333.); the duty to help the insureds determine the amount of loss (10 *Cal. Code Regs.* § 2695.4 ["When additional benefits might reasonably be payable under an insured's policy upon receipt of additional proofs of claim, the insurer shall immediately … assist the insured in determining the extent of the insurer's additional liability."]); the duty to promptly pay undisputed amounts (CACI 2337 (l)); the duty to not ask for duplicative information and documents (10 *Cal. Code Regs.* § 2695.7 (d)); the duty to investigate the claim objectively, i.e., with an eye towards coverage rather than non-coverage (10 *Cal. Code Regs.* § 2695.7 (d)); and the duty to treat the insureds' interests equal with those of the insurance company (CACI 2330).

Plaintiffs claim that Travelers breached each and every one of these duties, with the intent to drag out the claim, by repeated requests for information and examinations under oath, and to leverage a low settlement or a voluntary withdrawal of the claim.

## 2. ARGUMENT

### 2.1. La Jolla Spa sufficiently responded to the interrogatories concerning the Vitaphenol and Obagi purchases.

In its denial of plaintiffs' insurance claim, Travelers asserted that Ms. York made a material misrepresentation of fact because plaintiffs' business personal property inventory submitted during the insurance claim contained line items for two specific cosmetics: Vitaphenol and Obagi.  (Howe decl., ¶ 4.) According to Travelers, the representation was false because the Vitaphenol line was sold by the court-ordered receiver during the divorce proceeding and the Obagi line was awarded to the ex-husband prior to the September 18, 2009 theft. (*Id.*)

In accusing plaintiffs of insurance fraud, Travelers clearly never considered the possibility that La Jolla Spa may have made further purchases of two product lines between the time the divorce was finalized (early August 2009) and the date of the theft (September 18, 2009) and thereafter in order to replenish supplies. Apparently,

1  the insurance company now realizes it did not fully investigate the issue before

2  making the criminal accusation, because it served interrogatories asking that La

3  Jolla Spa identify, with painstaking specificity, the dates of any subsequent

4  purchases, from whom the purchases were made, the quantities purchased, etc.

5  (Interrogatories 28-31.)

6      The interrogatories were extremely burdensome and oppressive, especially given

7  the almost 5 years that have passed since the September 18, 2009 theft.

8  Nevertheless, La Jolla Spa provided sufficient responses to the interrogatories. It did

9  not refuse to respond. It did not provide only objections. Instead, it provided all

10  responsive information it was able to provide. Namely, it responded that due to the

11  passage of time, the theft of potentially responsive paperwork and the company's

12  eviction from the building, La Jolla Spa was unable to provide all of the requested

13  information. Nevertheless, La Jolla Spa confirmed that the products were purchased

14  after the conclusion of the divorce proceedings and after the September 18, 2009

15  theft. La Jolla Spa also produced to Travelers actual documents reflecting the

16  presence of the products at the business on dates after August 2009 and September

17  18, 2009, including, but not limited to, October 22, 2009 and January 2010. (Exh. B

18  to Howe decl., ¶ 5.)

19      There was nothing more that La Jolla Spa could provide at the time the responses

20  were made. The fact that Travelers may not be happy with the responses is

21  irrelevant. There was nothing evasive about them. If further documentation is

22  discovered, it will be produced to Travelers. If no further documentation is

23  discovered, then La Jolla Spa will be bound by the extent of its discovery responses.

24  In the meantime, no further responses are warranted.

25  **2.2. La Jolla Spa's objections to the financial loss calculation interrogatories**

26  **were proper and should be sustained.**

27      Travelers also propounded two interrogatories (33 and 34) asking for

28  excruciating detail as to how La Jolla calculated financial numbers set forth in

discovery responses served during the early stages of this case. Specifically, the responses were served in or around the time that La Jolla Spa was represented by counsel with little to no experience with litigation and insurance bad faith and shortly after the date the Hon. Magistrate Judge William Gallo had recommended terminating sanctions against the company for purported prior discovery abuse (a recommendation that the District Judge chose not to adopt based on paperwork that La Jolla Spa's present counsel filed shortly after he became counsel of record).

La Jolla Spa objected on several grounds, including overbreadth and oppression, vagueness, and that the requests called for disclosure of expert witness information. Each objection should be sustained. With respect to the first three objections, it is impossible to determine exactly just what the interrogatory means: How much detail? What information is requested? Is Travelers asking for the mechanical process? The analytical analysis? The interrogatory is unclear. It also calls for La Jolla Spa to speculate as to its mindset over a year ago, when the prior interrogatory responses were made. This is clearly inappropriate.

What Travelers really wants is information about La Jolla Spa's claimed financial losses. To that end, La Jolla Spa has retained a well-known and experienced financial damages expert, Robert Taylor, at Brinig & Associates. (Howe decl., ¶ 6.) Mr. Taylor has already been identified in La Jolla Spa's initial designation of expert witnesses. The company has also already identified Mr. Taylor's anticipated areas of opinion testimony. Mr. Taylor's expert report will be served in accordance with the court's current scheduling in August 2014. At that time, Travelers will receive all of the information pertaining to La Jolla Spa's financial damages claim. (*Id.*) In the meantime, the information remains protected work product because it is the subject of expert testimony in this case. La Jolla Spa's objections should therefore be sustained.

**2.3.  La Jolla Spa's responses to the document demands were sufficient.**

In addition to the above interrogatories, Travelers propounded requests for documents concerning La Jolla Spa's purchases of Vitaphenol and Obagi after the resolution of the divorce proceeding in August 2009 (requests 53-54) and La Jolla Spa's claim that it and other related businesses were forced to close down because of Travelers' conduct (requests 56-61). La Jolla Spa's responses were sufficient. The company did not refuse to respond. It did not provide only objections. It produced all responsive documents within its custody and control at the time of the responses. In other words, the information has been provided. The fact that Travelers may not like the extent of documentation produced is irrelevant. Again, if further documentation becomes available, La Jolla Spa will produce it to Travelers. If it is unable to produce any further information, La Jolla Spa will be bound by the extent of information it has provided. Nothing more is warranted.

To the extent Travelers argues that documentation is being withheld on grounds of privilege, the argument is misplaced. The only reason the responses mentioned producing all "non-privileged, non-objectionable" documentation is because the requests were entirely overbroad and thus potentially called for the production of clearly privileged information. For example, each request called for production of documents that not only *evidence* the topic referenced in the request, but also documents that "*refer* to" and "*relate* to" the topic. Read literally, this language called for production of correspondence between La Jolla Spa and its present litigation counsel (e.g., if counsel wrote an e-mail to the client regarding the discovery requests, that communication would "refer to" or "relate to" the topic at hand). La Jolla Spa was not required to produce any such information, nor should it be required to provide a privilege log of communications with its litigation attorney.

**2.4.  La Jolla Spa's responses to the admission requests were sufficient.**

Lastly, Travelers propounded several admission requests, apparently aimed at triggering some type of policy exclusion or other coverage defense. For example, in

requests 21 through 23, Travelers asked La Jolla Spa to admit that "theft of equipment from the server room," "theft of computers and equipment from the Call Center," and theft of "inventory and products from the retail boutique and spa" all occurred prior to September 18, 2009. Travelers apparently wants to establish that the ex-husband removed these items from the La Jolla Spa building prior to September 18, 2009, because that fact will somehow trigger a policy provision that excludes coverage for theft by owners or officers of "an insured." Travelers apparently wants to argue that, prior to September 18, 2009, the ex-husband was an officer or owner of two insureds at that time (i.e., the ex-husband's two medical entities).

La Jolla Spa's responses were entirely appropriate. The company did not refuse to respond. It did not assert only objections. It admitted as much of the requests as it could and denied the remainder.

With respect to the objections asserted, each request was hopelessly vague as written. It appears that Travelers wants to establish that the equipment or product at issue was removed from one part of the building to another (e.g., equipment in the server room was taken from that room to the second floor of the building, where the ex-husband's medical entities were based). If that is what Travelers wanted La Jolla Spot to admit, then it never asked that question. By including the word "theft" in the requests, each request became hopelessly vague, because it implied the items at issue were taken away from the insured premises to another location. Further, by placing the word "theft" immediately in front of the phrases "equipment from the server room" and "computers and equipment from the Call Center," requests 21 and 22 were hopelessly vague as to whether the word "theft" characterized the type of equipment at issue or stood alone as an individual event.

As far as La Jolla Spa is aware, the *theft* (i.e., removal of La Jolla Spa property by the ex-husband from the *insured location* to a location outside the premises— e.g., the ex-husband's new business location) took place on September 18, 2009.

1   That's when the moving trucks were observed. La Jolla Spa is unaware of any
2   information that the property was moved from the insured premises on an earlier
3   date.

4       This is how La Jolla Spa responded to each of the admission requests. The
5   responses were proper. If Travelers wanted an admission regarding when particular
6   items were moved from one part of the La Jolla Spa building to another part of the
7   building (as opposed to a location off the premises), then it should have written the
8   request to ask for that information.  For example, Travelers could have simply
9   asked:

10          Admit that, prior to September 18, 2009, the ex-husband
11          removed equipment from the La Jolla Spa server room to the
12          second floor of the La Jolla Spa building.

13      Such a request would not have been vague. But, Travelers never asked this
14  question. Instead, it peppered each request with the word "theft," which caused the
15  ambiguity explained above. In the meantime, the responses to the questions it did
16  ask were proper.

17      Lastly, in requests 29 and 30, Travelers asked La Jolla Spa to admit that two
18  physicians (Dr. Chaffoo and Dr. Mann) performed surgeries in the surgical suite of
19  the La Jolla Spa building sometime between November 2009 and March 10, 2010.
20  La Jolla Spa responded that the physicians performed one or more surgeries in the
21  surgical suite prior to March 10, 2010. It denied every other portion of the request.
22  The responses were proper. La Jolla Spa was required to admit as much of each
23  request as possible and, failing that, deny the remainder. La Jolla Spa did so. It
24  admitted that one or more surgeries was done prior to March 10, 2010. The fact that
25  it cannot admit that the first surgery was done in November 2009 is irrelevant.

26                          **3. CONCLUSION**
27      Each of La Jolla Spa's responses was sufficient and proper. The court should
28  deny Travelers' motion for supplemental responses.

**DECLARATION OF PATRICK HOWE**

I, Patrick Howe, declare as follows:

1. I am an attorney at law licensed to practice before all courts in the State of California, including this court. I am counsel of record for plaintiff La Jolla Spa M.D., Inc. ("La Jolla Spa".)

2. Since the commencement of my representation of La Jolla Spa in this case in May 2013, I have been personally involved in all stages of the litigation, including pleadings, motions, and discovery proceedings.

3. Exhibit A to this declaration is a true correct copy of one of the documents at issue in this case, i.e., the divorce judgment between Dianne York and Mr. Goldman M.D. This document has been produced during discovery and has been the subject of prior motions in this case.

4. I have read the denial letter from Travelers to the plaintiffs in this case during the underlying insurance claim. In that letter, it states that the denial was based in part on the grounds that Ms. York made a material misrepresentation of fact because plaintiffs' business personal property inventory submitted during the insurance claim contained line items for two specific cosmetics: Vitaphenol and Obagi. According to the denial letter, the representation was false because the Vitaphenol line was sold by the court-ordered receiver during the divorce proceeding and the Obagi line was awarded to the ex-husband prior to the September 18, 2009 reported theft involved in the insurance claim.

5. In response to the document demands at issue on this discovery dispute, I served on Travelers' counsel of record a CD containing documentation that La Jolla Spa was producing in response to the document demands. That documentation included records reflecting the presence of the products at the business on dates after August 2009 and September 18, 2009, including, but not limited to, October 22,

EXHIBIT "B" TO JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE

1  2009 and January 2010. These documents were included within the production

2  numbered 832-2398.

3      6.  On June 2, 2014, I served all parties in this case with La Jolla Spa's initial

4  designation of expert witnesses. In it, I designated Robert Taylor, at Brinig &

5  Associates. In the designation, I attached the expert's CV and also explained that his

6  anticipated opinion testimony would involve the following: "Mr. Taylor is an

7  economic damages expert. His CV is attached. He is expected to testify about

8  plaintiff La Jolla Spa's economic damages, including but not limited to, business

9  interruption losses, loss of income, normal operating expenses, lost profits, and the

10  value of La Jolla Spa. He is also expected to testify in rebuttal to opinions expressed

11  by defendant Travelers Property Casualty Insurance Company of America's experts.

12  Mr. Taylor's hourly rate for deposition and trial is $375.00."

13      I declare under penalty of perjury under the laws of the United States of America

14  that the foregoing is true and correct.

15

16  Date: June 13, 2014

17

18  Respectfully submitted,

19  By:  *s/Patrick M. Howe*

20              PATRICK M. HOWE

21  Attorney for plaintiff La Jolla Spa
   MD, Inc.

22  E-mail: pat@patrickhowelaw.com

23

24

25

26

27

28

EXHIBIT "B" TO JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE

# EXHIBIT A

| | FL-180 |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Douglas A. Stoodt, Esq.<br>Douglas A. Stoodt, Esq.<br>Law Office of Douglas Stoodt<br>11440 West Bernardo Court, Suite 300<br>San Diego, California 92127<br>   TELEPHONE NO.: (858) 592-7800   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* DIANNE YORK-GOLDMAN | **FOR COURT USE ONLY**<br><br>F I L E D<br>Clerk of the Superior Court<br>SEP 0 2 2009<br>BY: L. LIMON |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
   STREET ADDRESS: 325 South Melrose Drive
   MAILING ADDRESS:
   CITY AND ZIP CODE: Vista, CA 92083-6627
   BRANCH NAME:

**MARRIAGE OF**
   PETITIONER: DIANNE YORK-GOLDMAN

   RESPONDENT: MICHEL P. GOLDMAN

| **JUDGMENT** | **CASE NUMBER:** |
|---|---|
| [X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY<br>  [ ] Status only<br>  [ ] Reserving jurisdiction over termination of<br>    marital or domestic partnership status<br>  [ ] Judgment on reserved issues<br>  Date marital or domestic partnership status ends: | DN 149413 |

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders. The restraining orders are contained on page(s) of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [X] Default or uncontested [X] By declaration under Family Code section 2336
  [ ] Contested
  a. Date:      Dept.:      Room:
  b. Judicial officer *(name):*    [ ] Temporary judge
  c. [ ] Petitioner present in court    [ ] Attorney present in court *(name):*
  d. [ ] Respondent present in court    [ ] Attorney present in court *(name):*
  e. [ ] Claimant present in court *(name):*
  f. [ ] Other *(specify name):*    [ ] Attorney present in court *(name):*

3. The court acquired jurisdiction of the respondent on *(date):* July 21, 2008
  a. [ ] The respondent was served with process.
  b. [X] The respondent appeared.

**THE COURT ORDERS, GOOD CAUSE APPEARING**

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
    (1) [X] on *(specify date):*
    (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
  b. [ ] Judgment of legal separation is entered.
  c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

  d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
  e. [ ] Judgment on reserved issues.
  f. The [ ] petitioner's [ ] respondent's former name is restored to *(specify):*
  g. [ ] Jurisdiction is reserved over all other issues, and all present orders in effect except as provided below.
  h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order* (form FL-192) is attached.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>FL-180 [Rev. January 1, 2007] | **JUDGMENT**<br>(Family Law) | Legal<br>Solutions<br>Plus |

Family Code, §§ 2024, 2340, 2343, 2346

TRAV002577
Exhibit 4
Page 59

**Exhibit A**
**Page 001**

| | FL-180 |
|---|---|
| CASE NAME (Last name, first name of each party): Marriage of Goldman | CASE NUMBER:<br>DN 149413 |

**4.** *(Cont'd.)*

   i. ☐ A settlement agreement between the parties is attached.

   j. ☒ A written stipulation for judgment between the parties is attached.

   k. ☐ The children of this marriage or domestic partnership.

      (1) ☐ The children of this marriage or domestic partnership are:

         Name                       Birthdate

      (2) ☐ Parentage is established for children of this relationship born prior to the marriage or domestic partnership.

   l. ☐ Child custody and visitation are ordered as set forth in the attached

      (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

      (2) ☐ *Child Custody and Visitation Order Attachment* (form FL-341).

      (3) ☐ *Stipulation and Order for Custody and/or Visitation of Children* (form FL-355).

      (4) ☐ other *(specify):*

   m. ☐ Child support is ordered as set forth in the attached

      (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

      (2) ☐ *Child Support Information and Order Attachment* (form FL-342).

      (3) ☐ *Stipulation to Establish or Modify Child Support and Order* (form FL-350).

      (4) ☐ other *(specify):*

   n. ☒ Spousal or partner support is ordered as set forth in the attached

      (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

      (2) ☐ *Spousal, Partner, or Family Support Order Attachment* (form FL-343).

      (3) ☒ other *(specify):* Attached pages.

      **NOTICE:** It is the goal of this state that each party will make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal or partner support.

   o. ☒ Property division is ordered as set forth in the attached

      (1) ☐ settlement agreement, stipulation for judgment, or other written agreement.

      (2) ☐ *Property Order Attachment to Judgment* (form FL-345).

      (3) ☒ other *(specify):* Attached pages.

   p. ☐ Other *(specify):*

Each attachment to this judgment is incorporated into this judgment, and the parties are ordered to comply with each attachment's provisions.

Jurisdiction is reserved to make other orders necessary to carry out this judgment.

Date: XXXXXXXXXXXXXXXXXXXXX          XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

                                            JUDICIAL OFFICER

**5.** Number of pages attached: _6_            ☒ SIGNATURE FOLLOWS LAST ATTACHMENT

---

**NOTICE**

Dissolution or legal separation may automatically cancel the rights of a spouse or domestic partner under the other spouse's or domestic partner's will, trust, retirement plan, power of attorney, pay-on-death bank account, transfer-on-death vehicle registration, survivorship rights to any property owned in joint tenancy, and any other similar thing. It does not automatically cancel the rights of a spouse or domestic partner as beneficiary of the other spouse's or domestic partner's life insurance policy. You should review these matters, as well as any credit cards, other credit accounts, insurance policies, retirement plans, and credit reports, to determine whether they should be changed or whether you should take any other actions.

A debt or obligation may be assigned to one party as part of the dissolution of property and debts, but if that party does not pay the debt or obligation, the creditor may be able to collect from the other party.

An earnings assignment may be issued without additional proof if child, family, partner, or spousal support is ordered.

Any party required to pay support must pay interest on overdue amounts at the "legal rate," which is currently 10 percent.

FL-180 [Rev. January 1, 2007]                   **JUDGMENT**                  Page 2 of 2

                               **(Family Law)**

TRAV002578

Exhibit 4
Page 60

Exhibit A
Page 002

1  THE COURT FINDS that the parties do hereby stipulate and agree and upon such

2 stipulation and good cause appearing therefore;

3  THE COURT FINDS that the information contained in the petition filed in this matter

4 is true and correct.

5  IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the community and

6 jointly owned property of the parties, is divided as follows:

7 1. Petitioner is awarded as her sole and separate property all right, title and interest in Fay

8 Avenue Properties, LLC, including the real property located at 7630 Fay Avenue, La Jolla,

9 California, and all assets and subject to all liabilities associated with said asset.  Respondent

10 and the businesses awarded to him herein, shall vacate the premises at 7630 Fay Avenue, La

11 Jolla, California, on or before December 31, 2009.  Pending the removal of Respondent and

12 said businesses from the premises, Respondent shall pay rent at the rate of $34,000.00 per

13 month, plus one-half of the utilities on a monthly basis, commencing September 1, 2009.

14 Respondent shall pay the full mortgage payment and utilities for the month of August, 2009.

15 Notice of the utility charges to be presented to Respondent within ten (10) days of receipt.

16  Commencing August 17, 2009, Petitioner shall have the right to re-enter the building

17 for the purpose of taking back management, control and operation of the Spa.  The computer

18 consultant for Petitioner shall confirm the functionality and operation of the server and

19 desktop computers assigned to the Spa.  The computers for the Spa shall be functionally

20 isolated from the computers and servers of the medical practices.  In the event Respondent

21 decides to vacate prior to December 31, 2009, he shall give to Petitioner at least thirty days

22 notice of his intent to do so.  Dan Close shall remain until September 1, 2009 to oversee the

23 transition of the management, control and operation of the Spa.  The court will retain

24 jurisdiction to supervise and make further orders regarding this provision.  Attorney Hildy

25 Fentin, Esq. shall be appointed arbitrator to resolve any disputes which may arise between

26 the parties during the period prior to Respondent vacating the Fay Avenue building.  The fees

27 for said arbitrator shall be equally shared between the parties.

28 2. Petitioner is awarded as her sole and separate property all right, title and interest in La

Marriage of Goldman  -1-  Sup. Ct. Case No. DN 149413

printed on recycled paper per CA Rules of Court, rule 2.101

TRAV002579
Exhibit 4
Page 61

Exhibit A
Page 003

1   Jolla Spa MD, Inc. including the telephone number 858-459-6868 and the trade name La

2   Jolla Spa MD, including all assets and subject to all liabilities as of September 1, 2009,

3   associated with said asset, except as otherwise provided herein.

4   3.    Petitioner is awarded as her sole and separate property all right, title and interest in

5   York-Goldman Enterprises, Inc. including all assets and subject to all liabilities associated

6   with said asset and subject to all liabilities as of September 1, 2009, except as otherwise

7   provided herein..

8   4.    Petitioner is awarded as her sole and separate property all right, title and interest in the

9   television production *Addicted to Beauty*, including all revenue therefrom and Petitioner shall

10   assume and indemnify Respondent from all liabilities associated with same.

11   5.    Petitioner is awarded as her sole and separate property all right, title and interest in

12   Residence No. 8408 Interest No. 12, Aspen Highlands Condominiums, located at 76

13   Prospector Road, Aspen, CO 81611, subject to all liabilities associated with said asset.

14   6.    Respondent is awarded as his sole and separate property all right, title and interest in

15   2000 Towerside Terrace, Unit 1401, Miami, Florida 33138, subject to all liabilities

16   associated with said asset.

17   7.    Respondent is awarded as his sole and separate property all right, title and interest in

18   the real property located at 5736 Dolphin Place, La Jolla, California, including the furniture,

19   furnishings, appliances contained therein, subject to all liabilities associated with said asset

20   including the sale thereof, except that Petitioner shall have her bed, office furniture, one-half

21   the linens & towels and one-half kitchenware. Petitioner shall have the exclusive right to

22   occupy the residence until December 31, 2009 or until escrow closes on the sale of the house,

23   whichever first occurs, and shall pay no rent during the months of August and September,

24   2009. Commencing October 1, 2009 Petitioner shall pay to Respondent the sum of $5,000

25   per month for the months of October, November, and December, 2009. Petitioner shall

26   cooperate fully with the sale of the property, including permitting the use of a lockbox.

27   Petitioner shall have no contact with any prospective buyer or their agent. The property shall

28   be shown on four hour notice and Petitioner shall not be present at any showing. Petitioner



Marriage of Goldman          -2-          Sup. Ct. Case No. DN 149413

printed on recycled paper per CA Rules of Court, rule 2.101

1   shall be responsible for her own utilities.  Petitioner and Respondent shall cooperate to do all

2   things reasonable and appropriate to facilitate the loan modification with Washington Mutual

3   Bank (Chase Bank), holding the first trust deed on the property.

4   8.     Respondent is awarded as his sole and separate property all right, title and interest in

5   Dermatology Cosmetic Laser Medical Association of La Jolla, Inc. (DCLA), including all

6   assets and subject to all liabilities associated with said asset, except as otherwise provided

7   herein.

8   9.     Respondent is awarded as his sole and separate property all right, title and interest in

9   Cosmetic and Vein Surgical Medical Center of La Jolla, Inc.(CVSC), including all assets and

10  subject to all liabilities associated with said asset, except as otherwise provided herein.

11  10.   Respondent is awarded as his sole and separate property all right, title and interest in

12  the 2004 Jaguar automobile, subject to any debt secured thereby.

13  11.   Respondent is awarded as his sole and separate property all right, title and interest in

14  the air miles generated by the parties' use of credit cards during the marriage.

15  12.   The shares of stock acquired by the parties during the marriage shall be divided in kind

16  between the parties as follows:  2/3 of the stock to Respondent; 1/3 of the stock to Petitioner.

17  13.   The investment accounts in each parties' name shall be awarded to that party.

18  14.   The existing patents, royalties, etc. created during the marriage, shall be equally divided

19  between the parties.  Each party receiving same shall report the receipt to the other party with

20  ten (10) days of receipt.

21      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent and his

22  attorney waive all unpaid court ordered sanctions.

23      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties shall

24  execute the joint State and Federal income tax returns  for tax year 2007 and 2008, to be filed

25  with the appropriate taxing authorities.  The refunds from said filings shall be awarded to

26  Petitioner.

27      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Family Law

28  Attorney's Real Property Lien, as security for fees and costs of Petitioner, currently recorded

Marriage of Goldman           -3-          Sup. Ct. Case No. DN 149413

printed on recycled paper per CA Rules of Court, rule 2.101

1 | against the real property located at 5736 Dolphin Place, La Jolla, California shall be release

2 | and recorded against the real property located at 7630 Fay Avenue, La Jolla, California.

3 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall

4 | deliver to the other party any separate personal property in his/her possession by August 17,

5 | 2009. Each party shall deliver to the other party any community personal property in his/her

6 | possession which he/she agrees to convey to the other party.  Any community personal

7 | property, the division of which is not agreed to shall be submitted to the arbitrator for

8 | decision as to division.  The personal property considered herein is on Exhibit "A" to this

9 | stipulated judgment.

10 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties' art work

11 | acquired during marriage located in the Fay Avenue building and Dolphin residence, shall be

12 | equally divided between the parties, using the values as previously established by appraisal.

13 | In the event of a dispute, the dispute shall be submitted to the arbitrator for final resolution.

14 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Petitioner is

15 | awarded as her sole and separate property all right, title and interest in the Vitaphenol

16 | Contract.

17 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent takes

18 | any interest he may have in the Obagi Medical Products, Inc., including  production line and

19 | contract.

20 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent shall

21 | assume and hold Petitioner harmless from the gift cards of the "CVSC & DCLA"; Petitioner

22 | shall assume and hold Petitioner harmless from the gift cards the gift cards of the La Jolla

23 | Spa MD.  The intent of this provision is an equal financial burden on each party due to the

24 | issued gift cards.  The arbitrator shall decide any dispute regarding equalization of the gift

25 | card liabilities in excess of $10,000, through and including August 2, 2010, payable from one

26 | party to the other.

27 |  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent take as

28 | part of CVSC & DCLA, the equipment on the second floor of La Jolla Spa MD, including

Marriage of Goldman                  -4-                  Sup. Ct. Case No. DN 149413

printed on recycled paper per CA Rules of Court, rule 2.101

TRAV002582
Exhibit 4
Page 64

Exhibit A
Page 006

1  but not limited to the liposuction equipment, except for all equipment in the surgical suites,

2  which includes lights and anesthesia equipment and other fixtures attached to the building,

3  and shall assume and hold Petitioner harmless from liabilities therefor.  In the event

4  Petitioner desires to obtain and/or retain laser equipment from any of the vendors of the Spa,

5  she is free to deal directly with such lenders.

6      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that as and for non-

7  modifiable spousal support Respondent shall pay to Petitioner the sum of $5,000.00 per

8  month commencing October 1, 2009 through to and including December 31, 2009.  The

9  court is forthwith divested of the power or jurisdiction to modify the amount of support or to

10  extend the obligation to pay support beyond December 31, 2009.  The parties are waiving

11  their respective rights pursuant to *In re Marriage of Vomacka* (1984) 36 Cal. 3d 459, *In re*

12  *Marriage of Brown* (1995) 35 Cal.App. 4th 785, and *In re Marriage of Ousterman* (1996) 46

13  Cal.App. 4th 1090.

14      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the court reserve

15  jurisdiction to make further orders to accomplish the purpose of this stipulated judgment.

16      Upon execution of this stipulated judgment, either party may enter the judgment as an

17  order under Civil Procedure Code §664.6.

18      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that both parties shall

19  execute and exchange Final Declarations of Disclosure on or before August 31, 2009.

20      THE COURT FINDS that each party acknowledges that he/she has the right to

21  additional discovery procedures designed to obtain information which may be necessary to

22  . . .

23  . . .

24  . . .

25  . . .

26  . . .

27  . . .

28  . . .

Marriage of Goldman                              -5-                    Sup. Ct. Case No. DN 149413

printed on recycled paper per CA Rules of Court, rule 2.101

1   protect his/her rights in this action.  With full knowledge of the potential consequences of so

2   doing, each party hereto directed his/her attorney to not perform any further discovery

3   procedures and is entering into this agreement voluntarily without the benefit of these

4   procedures.

5   DATED: _Aug. 2, 2009_        _Dianne York Goldman_

6                                      DIANNE YORK-GOLDMAN, Petitioner

7   DATED: _8-2-2009_

8                                        MITCHEL PAUL GOLDMAN, Respondent

9   DATED: _8/2/2009_

10                                    DOUGLAS A. STOODT, Esq.
                                      Attorney for Petitioner

11

12   DATED: _8-2-2009_                          GORDON D. CRUSE, Esq.
                                      Attorney for Petitioner

13

14   DATED: _8-22-2009_

15                                    HON. WILLIAM J. HOWATT, Jr. (Ret.)
                                   PRIVATELY COMPENSATED JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

Marriage of Goldman                 -6-               Sup. Ct. Case No. DN 149413

### ATTACHMENT "A" TO STIPULATED JUDGMENT OF DISSOLUTION

1. Baby grand piano (purchased with funds from the sale of Respondent's childhood baby grand piano)

2. Coin and stamp collection consisting of 6 three-ring binders of coins in plastic sleeves.  Coins include: (confirmed as Respondent's separate property from prior dissolution)

     a. A complete set of Palestinian and Israel coins from 1922-1986

     b. Approximately 50 silver dollars from 1882-1926

     c. Over 100 silver half dollars, quarters, dimes from late 1800-1964

3.  Rosenthal asymmetry china full set of 12: dinner plates, soup bowls, salad plates, desert bowls, tea cups and saucers, sugar bowl, tea pit, cream bowl

4. Sterling silver Yemenite Kiddush cup and holder from Israel

5. Sterling silver Shabbat fragrance holder

6. Sterling silver menorah

7. Sterling silver serving plate with 4 crystal glasses (gift from Respondent's Aunt Laura)

8. Telescope (birthday present to Respondent)

9. Crystal jellyfish sculpture (birthday present to Respondent)

10. Jellyfish glass sculpture

11. Czech glass sculpture

12. Hawaiian bronze woman

13. La Jolla bronze woman

14. Two (2) Agam paintings (one of which was a gift to Respondent)

15. Australia "Bondi Beach2" painting

16. Italian crystal sunburst bowl (given to Respondent by Laser Medicine by Cynosure Laser · Co.)

17. Crystal skinmedica bowl

18. Baccarat crystal candlesticks

19. Baccarat centerpiece - long bowl on dining room table

20. Assorted Baccarat and other crystal bowls

21. Respondent's Father's Guns

     a. 12 G shogun

     b. M-carbine rifle

     c. 22 caliber target riffle

     d. World War I 45 pistol

     e. 9mm Beretta handgun

22. Ostrich golf bag (birthday present to Respondent)

23. Watchcase holder from Ernest Howard (birthday present to Respondent)

TRAV002585

Exhibit 4
Page 67

Exhibit A
Page 009

ATTACHMENT "A" TO STIPULATED JUDGMENT OF DISSOLUTION (cont.)

24.     Tiffany champagne flutes (8)
25.     Tiffany  red wine glasses (8)
26.     Tiffany cordials (8)
27.     Tiffany sterling place settings (6)
28.     Tiffany ice bucket
29.     Silver ice bucket
30.     Tiffany ice tongs
31.     Baccarat cordial set
32.     Baccarat Decanter
33.     Baccarat candle holder
34.     Baccarat heart
35.     Baccarat vase
36.     Waterford vase
37.     Waterford ashtray
38.     Waterford pitcher
39.     Waterford goblet
40.     Tiffany bowls
41.     Cartier bowls
42.     Cartier tray
43.     Sterling tray
44.     Sterling candlesticks
45.     Sterling dessert pieces
46.     Waterford dessert tray
47.     Waterford cake tray w/cover
48.     Video Camera
49.     Canon Camera
50.     Tripod
51.     Binoculars
52.     Petitioner's firearms
53.     Petitioner's golf clubs
54.     Lalique bird
55.     Bottles of expensive Champagne
56.     Bottles of expensive wine (with our names on the bottles).
57.     Mother-of-Pearl place mats.
58.     Crystal paper weight.
59.     Printer/Fax machine.
60.     Shredder.
61.     Safe.
62.     Petitioner's ski clothes, boots, goggles.
63.     Petitioner's cashmere coat and leather & fur coat.
64.     All the tools in the garage.

TRAV002586

Exhibit 4
Page 68

Exhibit A
Page 010

*Fay Avenue Properties, LLC, et al. v. Travelers Property Casualty Company of America*
USDC-CASD Case No. 3:11-cv-02389-GPC-WVG

### PROOF OF SERVICE

I, Felicia Ball, declare:

I am employed in the County of Los Angeles, state of California. I am over the age of 18 and not a party to the within action; my business address is 601 South Figueroa Street, Suite 2350, Los Angeles, California 90017.

On **June 13, 2014,** I served a copy of the foregoing document described as: **JOINT STATEMENT FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING PLAINTIFF LA JOLLA SPA MD, INC.'S RESPONSES TO INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSIONS** on all interested parties in this action by placing true and correct copies thereof enclosed in sealed envelopes addressed as follows:

### [PLEASE SEE ATTACHED SERVICE LIST]

By electronically filing the foregoing document with the Clerk of the United States District Court, Southern District, using its ECF system, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

I declare under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 13, 2014,** at Los Angeles, California.

_____
*/s/ Felicia Ball*
FELICIA BALL

**PROOF OF SERVICE**

*Fay Avenue Properties, LLC, et al. v. Travelers Property Casualty Company of America*
USDC-CASD Case No. 3:11-cv-02389-GPC-WVG

**SERVICE LIST**

| | |
|---|---|
| Patrick M. Howe | *Attorneys for Plaintiff* |
| 600 West Broadway, Suite 1150 | La Jolla Spa MD, Inc. |
| San Diego, California 92101 | |
| Telephone: (619) 232-4261 | |
| Facsimile:   (619) 232-4840 | |
| E-mail:       pat@patrickhowelaw.com | |
|                   team@patrickhowelaw.com | |

| | |
|---|---|
| Meredith King | *General Bankruptcy Counsel for Plaintiff,* |
| Richard S. Van Dyke | Fay Avenue Properties, LLC |
| James A. Bush | |
| **VAN DYKE & ASSOCIATES, APLC** | |
| 501 West Broadway, Suite 1600 | |
| San Diego, California 92101 | |
| Telephone: (619) 344-0977 | |
| Facsimile:   (619) 599-0716 | |
| E-mail:       rsvandyke@vdalaw.com | |
|                   ibush@vdalaw.com | |

**PROOF OF SERVICE**