1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   FAY AVENUE PROPERTIES, LLC.,          CASE NO. 3:11-cv-02389-GPC-WVG
     LA JOLLA SPA MD, INC.,
12                                         **ORDER OVERRULING**
                            Plaintiffs,    **OBJECTIONS TO MAGISTRATE**
13         vs.                             **JUDGE'S ORDER PURSUANT TO**
                                           **FEDERAL RULE OF CIVIL**
14                                         **PROCEDURE 72**

15   TRAVELERS PROPERTY                    [Dkt. No. 99.]
     CASUALTY COMPANY OF
16   AMERICA; AND DOES 1 through
     100, inclusive,
17
                            Defendants.
18

19         Before the Court is Plaintiff La Jolla Spa MD, Inc.'s ("La Jolla Spa") motion to

20   modify/set aside Magistrate Judge's Order on Joint Motion for Determination of

21   Discovery Dispute pursuant to Federal Rule of Civil Procedure ("Rule") 72 filed on

22   April 2, 2014.  (Dkt. Nos. 98, 99.)  As part of the order, Magistrate Judge William V.

23   Gallo denied Plaintiff's motion to compel production of documents pertaining to

24   documents withheld by Defendant based on the attorney-client privilege.  Based on the

25   reasoning below, the Court OVERRULES Plaintiff's objections to the Magistrate

26   Judge's Order filed on April 2, 2014.

27

28

**Factual Background**[1]

Plaintiff La Jolla Spa operated a high-end medical spa and boutique in downtown La Jolla and Plaintiff Fay Avenue Properties, LLC ("Fay Ave Property") owned the two story building where La Jolla Spa was located.  Both Plaintiffs were named insured under an insurance policy issued by Travelers Property Casual Company of America ("Travelers").  Dianne York is the President of La Jolla Spa and sole member of Fay Avenue Properties.  La Jolla Spa brings the instant objection to the Magistrate Judge's order pursuant to Rule 72.

Plaintiff occupied the first floor of 7630 Fay Avenue, La Jolla, California ("Fay Ave Property"), where it operated a spa and retail shop.  The second floor of the Fay Ave Property was partially occupied by the medical practice of York's former husband, Dr. Mitchell Goldman ("Goldman").  On or about September 18, 2009, Goldman vacated the Fay Ave Property, and moved his medical practice and equipment to another location, in accordance with the terms of York's and Goldman's divorce judgment.  Plaintiff contends that Goldman, and/or persons acting on his behalf, stole medical and office equipment from the Fay Ave Property.

On or about January 26, 2010, Defendant received notice of the alleged September 18, 2009 theft.  (Dkt. No. 93-3, Farley Decl. ¶ 2, Ex. B.)  On February 19, 2010, Travelers assigned the insurance claim to claims adjuster, Erin Farley ("Farley").  (Id. ¶ 4.)  On February 22, 2010, Farley sent York a letter that requested documents and information to substantiate Plaintiff's claim.  (Id. ¶ 5.)  By March 29, 2010, Plaintiff produced documentation to Defendant, including the York-Goldman divorce judgment and a claim spreadsheet of Plaintiff's claimed inventory that allegedly had been stolen.  (Id., Farley Decl. ¶¶ 7-10.)  The Farley declaration also states in pertinent part:

(1)  In late March 2010, Defendant retained the law firm of Jones Turner, LLP ("Jones Turner") to assist it by taking the Examinations Under Oath ("EUO") of

---

[1]The facts are taken from the Magistrate Judge's Order Regarding Joint Statement for Determination of Discovery Dispute.  (Dkt. No. 98 at 11-20.)

1 │ Plaintiff and to provide coverage advice.  (Id. ¶ 12.)

2 │   (2) Farley intended that all communications between Defendant and Jones

3 │ Turner would be privileged and confidential.  (Id. ¶ 13.)

4 │   (3) The attorneys at Jones Turner, Alan Jones and Steven Turner ("Turner") were

5 │ not, and are not, employees of Defendant.  Throughout the course of the administration

6 │ of Plaintiff's claim, Farley sought coverage advice from Turner.  (Id. ¶ 14.)

7 │   (4) On August 25, 2010 and January 25, 2011, Farley attended York's

8 │ examination under oath ("EUO").  At the August 25, 2010 and January 25, 2011 EUOs,

9 │ York testified that she would provide many of the documents requested by Turner and

10 │ Defendant, but that had not yet been provided, to support Plaintiff's claim. At the

11 │ conclusion of the January 25, 2011, York requested an advance payment from

12 │ Defendant.  (Id. ¶ 16.)

13 │   (5) On January 31, 2011, Defendant made an advance payment of $250,000 to

14 │ Plaintiff Fay Ave Properties. The payment was conditioned upon York's

15 │ representations, which Defendant assumed to be true for the purposes of the payment.

16 │ On January 31, 2011, Farley sent York a letter that detailed the reasoning and

17 │ conditions on which Defendant's advance payment was made.  (Id. ¶ 18, Ex. 6.)

18 │   (6) Jones Turner did not have the authority to grant or deny advance payment

19 │ requests made to Defendant, and did not make the decision to make the $250,000

20 │ advance payment.  (Id. ¶ 19.)

21 │   (7) On February 7, 2011, Plaintiff's attorney sent an email to Turner that

22 │ requested an additional advance payment from Defendant.  On February 9, 2011,

23 │ Farley responded to the February 7, 2011 email by highlighting that Plaintiff had failed

24 │ to provide to Defendant many documents to substantiate its claim that Plaintiff had

25 │ previously agreed to provide to Defendant. The request for the additional advance

26 │ payment was denied.  (Id. ¶¶ 20-21, Ex. 7.)

27 │   (8) On April 22, 2011, Farley attended another session of York's EUO. At the

28 │ EUO, York produced a box of documents that purportedly substantiated Plaintiff's

1   claim. The EUO was suspended to allow York to produce additional documents to

2   Defendant.  (Id. ¶ 23.)

3   (9) After the April 22, 2011 EUO, Farley learned from Turner that Plaintiff's

4   attorney requested an advance payment from Defendant.  On April 27, 2011, Farley

5   sent a letter to Plaintiff's attorney which states, *inter alia*, that Plaintiff had failed to

6   provide to Defendant many documents to substantiate its claim that Plaintiff had

7   previously agreed to provide, that Plaintiff had added new items to its claim that had

8   not been previously identified, that during the April 22, 2011 EUO, York was unable

9   to provide basic information regarding Plaintiff's claim, and that it was Plaintiff's duty

10   and responsibility to provide correct information in support of the claim.  The request

11   for an advance payment was denied.  (Id. ¶ 24, Ex. 8.)

12   (10) On April 29, 2011, Plaintiff's attorney sent Turner a revised inventory of

13   allegedly stolen items.  The revised inventory increased the number of stolen items

14   from approximately 200 to over 1,000 items, and had increased the claim by millions

15   of dollars.  (Id. ¶ 25.)

16   (11) On May 23, 2011, York sent Farley and Turner an email that requested

17   another advance payment.  On May 27, 2011, Farley sent a letter to York which

18   provided a detailed account of Plaintiff's claim history, and noted that Plaintiff's failure

19   to provide to Defendant requested information about its claim had prevented Defendant

20   from completing its investigation.  The request for advance payment was denied.  (Id.¶¶

21   28-29, Ex. 10.)

22   (12) On June 2, 2011, Plaintiff's attorney sent Turner another updated claim

23   inventory. Turner sent the updated claim inventory to Farley. The updated claim

24   inventory had over 1000 line items and was valued at over $13 million.  (Id. ¶ 32.)

25   (13) On July 19, 2011, Farley received an email from Plaintiff's attorney which

26   asked for a $1 million advance payment.  On July 20, 2011, Farley responded that

27   Defendant could not fully respond t Plaintiff's claim, and that it would not pay another

28   advance without completing York's EUO.  (Id. ¶ 34, Ex. 13.)

(14) In late October/early November 2011, Turner forwarded to Farley an email from Plaintiff's attorney that requested an advance payment from Defendant. On November 11, 2011, Farley responded that Defendant's investigation of Plaintiff's claim was still ongoing and that Defendant continues to assess Plaintiff's claim. The request for the advance payment was denied. (Id. ¶ 37, Ex. 14.)

(15) By November 2011, it became clear to Farley, based on correspondence from Plaintiff's attorney, that York was refusing to complete her EUO. For this reason, *inter alia*, Defendant denied Plaintiff's claim. Defendant made the decision to deny coverage for Plaintiff's claim. (Id. ¶ 38.)

(16) Several persons who appear on Defendant's December 6, 2013 Privilege Log, but who were not identified at that time, are identified as employees of Defendant who were involved in the administration of Plaintiff's claim. (Id. ¶ 40.)

The Declaration of Steven D. Turner ("Turner Dec.") states in pertinent part:

(1) Jones Turner served as coverage counsel for Defendant for Plaintiff's claim from approximately March 2010 through early 2013. (Dkt. No. 95-6, Turner Decl. ¶ 1.)

(2) In late March 2010, Defendant gave Jones Turner the assignment to provide coverage advice and conduct EUOs in connection with Plaintiff's claim. In July 2010, Turner took over as the principal attorney for the assignment. Alan Jones had previously been the principal attorney for the assignment. (Id. ¶ 2.)

(3) From August 3, 2010 to November 18, 2010, Turner requested that Plaintiff's attorney provide him with the documents Plaintiff contends will substantiate its claim. On November 18, 2010, Turner was provided with a few documents. (Id. ¶¶ 3-8.)

(4) On August 25, 2010, Turner conducted an EUO of York. The EUO could not be completed because Plaintiff had not yet provided to Turner all documents related to the nature and scope of the alleged loss. At the EUO, York agreed to provide additional documents in support of Plaintiff's claim. (Id. ¶ 4.)

(5) On January 25, 2011, Turner conducted another session of the EUO of York.

3:11-cv-02389-GPC-WVG

1   At the EUO, York's testimony indicated that various documents promised to be
2   produced at the August 25, 2010 EUO had not been produced.  (Id. ¶ 10.)

3          (6) On January 26, 2011, Plaintiff's attorney provided Turner with documents
4   that partially supported Plaintiff's claim.  (Id. ¶ 11.)

5          (7) Turner had no power to authorize claim payments made by Defendant. The
6   scope and purpose of Turner's retention by Defendant was to complete the EUO and
7   provide coverage advice to Defendant.  (Id. ¶ 13.)

8          (8) From February 9, 2011 to April 22, 2011, Turner and Farley continued to ask
9   Plaintiff to provide documents to support Plaintiff's claim and to provide documents
10   that had been promised by York, but had not yet been produced.  (Id. ¶ 15-20.)

11           (9) On April 22, 2011, Turner conducted another session of York's EUO. At the
12   EUO, York produced to Turner a new box containing documents. Turner and Plaintiff's
13   counsel agreed to suspend the EUO to another date, due to York's production to Turner
14   of more documents.  At the EUO, York identified new items for which Plaintiff sought
15   recovery.  (Id. ¶¶ 21, 23.)

16          (10) On April 29, 2011, Plaintiff's attorney sent Turner a revised claim inventory
17   spreadsheet that detailed Plaintiff's claimed losses. The spreadsheet increased the claim
18   from 238 line items to over 1,000 line items.  (Id. ¶ 23, Ex. 25.)

19          (11) On April 29, 2011, Turner sent an email to Plaintiff's counsel that requested
20   that Plaintiff produce all supporting documentation regarding the new items identified
21   in the April 22, 2011 EUO. By May 4, 2011, Turner had not received a response to his
22   email. (Id. ¶ 24.)

23          (12) On May 5, 2011, Plaintiff's attorney sent Turner a re-revised claim
24   inventory spreadsheet, with some additional documents. The re-revised inventory
25   increased Plaintiff's claim to approximately 1,114 line items, which totaled over $13
26   million in value. (Id. ¶ 25, Ex. 27.)

27          (13) On May 12, 2011, Turner renewed his request to Plaintiff for further
28   documentation to support Plaintiff's claim. York responded by requesting that

1   Defendant conduct the next session of her EUO, but failed to provide Turner with

2   additional information regarding the May 5, 2011 spreadsheet.  (Id. ¶ 27.)

3   (14) On May 13, 2011, Plaintiff's attorney informed Turner that Turner "may

4   deal with Ms. York directly."  (Id. ¶ 28, Ex. 29.)

5   (15) On May 27, 2011, Plaintiff's attorney sent an email to Turner that confirmed

6   that Plaintiff had still not produced all documents it promised to produce.  (Id. ¶ 33, Ex.

7   34.)

8   (16) On June 2, 2011, Plaintiff's attorney sent an email to Turner which Turner

9   understood to be the final revised inventory spreadsheet of the losses sustained by

10   Plaintiff.  (Id. ¶  34, Ex. 35.)

11   (17) On July 12, 2011, Turner conducted another session of York's EUO. The

12   EUO could not be completed due to the significant number of new items that had been

13   added to Plaintiff's claim.  (Id. ¶ 39.)

14   (18) The parties agreed that the fifth session of York's EUO would be conducted

15   on August 4, 2011. On August 3, 2011, Turner received an email from Plaintiff's

16   attorney that cancelled the August 4, 2011 EUO. Turner wrote to Plaintiff's attorney

17   to reschedule the fifth session of York's EUO. Plaintiff's attorney did not respond to

18   Turner's letter. No further EUO of York was scheduled. (Id. ¶¶ 42-46.)

19   (19) On December 20, 2011, Turner sent York and Plaintiff's attorney a letter

20   that detailed Defendant's denial of Plaintiff's claim.  (Id. ¶ 47, Ex. 43.)

21   **A.     Standard of Review of Magistrate Judge's Discovery Order**

22   Under Federal Rule of Civil Procedure 72(a), aggrieved parties may file

23   objections to the rulings of a magistrate judge in non-dispositive matters within

24   fourteen days.  Fed. R. Civ. P. 72(a).  In reviewing a magistrate judge's order, the

25   district judge "must consider timely objections and modify or set aside any part of the

26   order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C.

27   § 636(b)(1)(A); see also United States v. Raddatz, 447 U.S. 667, 673 (1980); Osband

28   v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002).  A magistrate judge's legal

1 conclusions are reviewable *de novo* to determine whether they are "contrary to law"

2 and findings of fact are subject to the "clearly erroneous" standard. Perry v.

3 Schwarzenegger, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

4 **B.     Attorney-Client Privilege**

5 　　　State law governs attorney-client privilege issues in federal district courts sitting

6 in diversity. Fed. R. Evid. 501; Star Editorial, Inc. v. United States District Court for

7 the Central District of California (Dangerfield), 7 F.3d 856, 859 (9th Cir. 1993); Oakes

8 v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998). Under California

9 law, "evidentiary privileges such as the attorney-client privilege are governed by

10 statute." HLC Props., Ltd. v. Superior Court, 35 Cal.4th 54, 59 (2005); Moeller v.

11 Superior Court, 16 Cal.4th 1124, 1129 (1997). California Evidence Code section 954

12 confers a privilege on the client "to refuse to disclose, and to prevent another from

13 disclosing, a confidential communication between client and lawyer . . . ." Cal. Evid.

14 Code § 954. "Confidential communications include information transmitted between

15 attorney and client, and 'a legal opinion formed and the advice given by the lawyer in

16 the course of that relationship.'" Calvert v. State Bar, 54 Cal.3d 765, 779 (1991)

17 (quoting Cal. Evid. Code § 952). "The attorney-client privilege attaches to a

18 confidential communication between the attorney and the client and bars discovery of

19 the communication irrespective of whether it includes unprivileged material." Costco

20 Wholesale Corp. v. Superior Court, 47 Cal.4th 725, 734 (2009).

21 　　　"The party claiming the privilege has the burden of establishing the preliminary

22 facts necessary to support its exercise, i.e., a communication made in the course of the

23 attorney-client relationship." Id. at 733. "Once that party establishes facts necessary

24 to support a prima facie claim of privilege, the communication is presumed to have

25 been made in confidence and the opponent of the claim of privilege has the burden of

26 proof to establish the communication was not confidential or that the privilege does not

27 for other reasons apply." Id. (citing Cal. Evid. Code § 917(a)); Wellpoint Health

28 Networks, Inc. v. Superior Court, 59 Cal. App. 4th 110, 123-24 (1997).

1    "[T]o determine whether a communication is privileged, the focus of the inquiry

2    is the dominant purpose of the relationship between the parties to the communication.

3    Under that approach, when the party claiming the privilege shows the dominant

4    purpose of the relationship between the parties to the communication was one of

5    attorney-client, the communication is protected by the privilege." Clark v. Superior

6    Court, 196 Cal. App. 4th 37, 51 (2011) (citing Costco, 47 Cal. 4th 739-40).

7    **1.    Whether Privilege Element Has Been Established**

8    Plaintiff argues that the Magistrate Judge's order concluding that Defendant

9    established the necessary elements of the attorney-client privilege for the withheld

10   documents is clearly erroneous and contrary to well-established California privilege

11   law.  Specifically, Plaintiff asserts that Defendant had the burden to establish the

12   attorney-client privilege as to each of the withheld 541 documents as opposed to just

13   establishing the dominant purpose in retaining the Jones Turner law firm.[2]  Defendant

14   argues that while it must show a prima facie case for privilege, it did not have to meet

15   the privilege elements for each withheld document.

16   The Magistrate Judge denied Plaintiff's motion to compel production of

17   documents withheld pursuant to the attorney-client privilege. (Dkt. No. 98 at 28.)  As

18   to whether an attorney client relationship existed between Defendant and Jones Turner,

19   the Magistrate Judge determined the dominant purpose of the relationship between

20   Defendant and outside coverage counsel, Jones Turner and concluded the following:

21       It is clear to the Court that Jones Turner, LLP performed both the
         function of attorney hired to render legal opinions regarding coverage
22       under the insurance policy at issue, and the function of a claim adjuster

23

24   _____

25       [2]Plaintiff argues that it is important to establish the privilege elements as to each withheld
     communications because Turner had communications with individuals other than Farley, who
26   provided a declaration in this dispute, and Defendant cannot establish privilege as to these other
     individuals.  However, in the declaration of Patricia A. Daza-Luu, these other persons were identified
27   as employees of Travelers.  Therefore, the Court agrees with Defendant that all communications with
     these individuals are covered under the attorney-client privilege. (Dkt. No. 94-13, Daza-Luu Decl.,
28   Ex. 44.)  As to other individuals who are consultants retained by Travelers on the claim, Defendant
     has agreed to produce correspondence between Steven Turner and its retained consultants. (Dkt. No.
     99-12, Daza-Luu Decl. ¶ 3.)  Therefore, Plaintiff's argument is without merit.

1    assigned to take EUOs.[3]  However, based on the representations of
2    Farley, Defendant's claim adjuster assigned to Plaintiff's claim, and the
     representations of Turner, the attorney at Jones Turner, LLP who
3    performed work on Plaintiff's claim, the Court finds that the dominant
     purpose of the relationship between Defendant and Turner was one of
4    attorney-client, not claims adjuster-insurance corporation.

5    (Dkt. No. 98 at 22.)  The Magistrate Judge rejected Plaintiff's argument that Defendant

6    had to establish the elements of the attorney-client privilege for each withheld

7    document.  The Magistrate Judge concluded that

8         [w]here the dominant or primary purpose of the relationship is to
          provide legal advice and claims adjusting happens to occur as a
9         collateral duty, as is the case here, Defendant need only establish a
          prima facie case that an attorney-client relationship exists. If Defendant
10        is able to make this showing, then all documents and communications
          are protected by the privilege without the necessity of having to make
11        individualized showings as to each communication or document.

12
     (Id. at 26.)  Cases have similarly held that in determining whether communications are
13
     privileged, the focus of the inquiry is the dominant purpose of the relationship between
14
     the parties to the communication and not to determine whether each communication
15
     meets the privilege standard.  McAdam v. State Nat'l Ins. Co., Inc., – F. Supp. 2d –,
16
     2014 WL 1614515 (S.D. Cal. Mar. 21, 2014) (J. Moskowitz); see Clark v. Superior
17
     Court, 196 Cal. App. 4th 37, 50-51 (2011).
18
          In McAdam, the court concluded that in an insurance coverage case determining
19
     whether the attorney-client privilege applies to documents, the court looks to the
20
     dominant purpose analysis.  McAdam v. State Nat'l Ins. Co., Inc., – F. Supp. 2d –,
21
     2014 WL 1614515 (S.D. Cal. Mar. 21, 2014) (J. Moskowitz).  In the case, the objector
22
     to the Magistrate Judge's discovery order argued that the predominant purpose test
23
     must be applied on a document-by-document basis.  Id. at *3.  However, the Court
24
     disagreed and stated that "if the dominant purpose of the relationship was attorney-
25

26        [3]Defendant disputes the Magistrate Judge's legal conclusion that taking EUOs is a function of
     a claims adjuster and not an attorney.  Defendant argues that California insurance law reflects that an
27   EUO is typically conducted by an attorney. See Cal. Prac. Guide Ins. Lit. Ch 6B-E, 6:289. The Court
     need not make a legal conclusion on this issue because despite the fact that the Magistrate Judge stated
28   that the EUO is typically conducted by an claims adjuster, he still concluded that the dominant purpose
     of the relationship was one of attorney-client, not claims adjuster-insurance company.

1    client at the time of the communications, they are privileged." Id. (quoting Cason v.

2    Federated Life Ins. Co., No. 10cv792, 2011 WL 1807427, at *2 (N.D. Cal. Oct. 17,

3    2011) ("it is not the dominant purpose of a particular communication that dictates

4    whether the attorney-client privilege is applicable; rather the issue is what *was the*

5    *dominant purpose of the relationship*") (emphasis in original).

6          In support of its argument, Plaintiff only points to the language of the state

7    privilege statutes referencing "communication," in the singular, to mean that the

8    privilege must be decided by looking at communications in the singular, not in bulk.

9    See Cal. Evid. Code §§ 912, 954.  However, Plaintiff does not present any cases to

10   support its proposition.  Moreover, as explained, courts have held to the contrary.

11         Therefore, the Court concludes that the Magistrate Judge's conclusion that the

12   dominant purpose test did not have to be applied to each withheld document was not

13   "contrary to law."  See Perry, 268 F.R.D. at 348.

14         **2.    Dominant Purpose of the Relationship**

15         Plaintiff argues that Travelers did not establish its dominant role in retaining the

16   Jones Turner firm was for legal advice based on two reasons.  Defendant opposes.

17         First, Plaintiff asserts that Defendant has failed to identify specific legal issues

18   requiring legal advice as the insurer or its counsel provided in Ivy Hotel San Diego,

19   LLC v. Houston Casualty Co., 10cv2183-L(BGS), 2011 WL 4914941, at *2 (S.D. Cal.

20   Oct. 17, 2011) and Umpqua Bank v, First American Title Ins. Co., No. Civ. S-09-3208

21   WBS EFB, 2011 WL 997212 (E.D. Cal. Mar. 17, 2011).  In both cases, there was a

22   declaration stating what legal issue would be sought by outside coverage counsel;

23   however, in this case, Travelers has failed to identify a single legal issue to be analyzed

24   by Jones Turner.  Defendant contends that Plaintiff's argument is contrary to law and

25   would improperly require it to divulge privileged communications with Jones Turner

26   to demonstrate the existence of an attorney-client relationship.

27         The Magistrate Judge found Plaintiff's argument unavailing since Costco, nor

28   its progeny, such as Ivy Hotel and Umpqua Bank require that the issue for which legal

advice was sought had to be noted or explained by the insurance adjuster or the attorney. (Dkt. No. 98 at 27.)

The Court agrees.  Plaintiff does not present supporting case law that such specificity is a requirement to show an attorney-client privilege.  Accordingly to caselaw, a party claiming the privilege must only show facts necessary to support a communication made in the course of the attorney-client relationship.  Costco Wholesale Corp., 47 Cal.4th at 733. In this case, Jones Turner was retained by Travelers to provide coverage advice. (Dkt. No. 93-2, Farley Decl. ¶ 12.)  The declarations demonstrate that Farley was the claims adjuster and was responsible for responding to all request for advance payments and made all coverage decisions while Jones Turner was retained to provide coverage advice.  Plaintiff has not provided sufficient evidence to rebut the prima facie claim of privilege demonstrating that the communication was not confidential or that the privilege does not apply.

Second, Plaintiff argues that Defendant did not establish Erin Farley's personal knowledge of key facts necessary to establish Travelers' dominant purpose in retaining the Jones Turner law firm in Farley's declaration.  According to Plaintiff, as opposed to the adjuster's declaration in Umpqua Bank, 2011 WL 997212 at *3, where the adjuster's declaration was very specific as to her knowledge and conduct, Farley presents conclusory statements on behalf of everyone involved in the claim. Defendant argues that Farley attested to all decision made by and on behalf of Travelers, including the decision to retain Jones Turner and the denial of Plaintiff's claim. (Dkt. No. 93-2, Farley Decl. ¶¶ 1, 12, 38.)  The Court concludes that Farley's declaration provides sufficient personal knowledge of key facts to support the Magistrate Judge's conclusion that the dominant purpose of the relationship was legal, not claims adjustment; therefore, the Magistrate Judge's conclusion is not "contrary to law" or "clearly erroneous." See Fed. R. Civ. P. 72(a); Perry, 268 F.R.D. at 348.

/ / / /

/ / / /

**Conclusion**

Based on the above, the Court OVERRULES Plaintiff's objections to the Magistrate Judge's Order Regarding Joint Statement for Determination of Discovery Dispute.  The hearing set for June 20, 2014 shall be **vacated.**

IT IS SO ORDERED.


DATED:  June 17, 2014

HON. GONZALO P. CURIEL
United States District Judge