1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAY AVENUE PROPERTIES, LLC., LA JOLLA SPA MD, INC., <br><br>                    Plaintiffs, <br><br>    vs. <br><br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; AND DOES 1 through 100, inclusive, <br><br>                    Defendants. | CASE NO. 3:11-cv-02389-GPC-WVG <br><br>**ORDER DENYING DEFENDANT'S *EX PARTE* MOTION FOR LEAVE TO FILE A COUNTERCLAIM AGAINST PLAINTIFF LA JOLLA SPA, MD, INC AND CONTINUANCE OF CASE MANAGEMENT ORDER DATES** <br><br>[Dkt. No. 116.] |

Before the Court is Defendant's *ex parte* motion for leave to file a counterclaim against Plaintiff La Jolla Spa MD, Inc. ("Plaintiff" or "LJS") and continuance of case management order dates. (Dkt. No. 116.) Plaintiff filed an opposition. (Dkt. No. 118.) On July 23, 2014, Defendant filed a request to file a reply. (Dkt. No. 119.) On the same day, Plaintiff filed an opposition to the request to file a reply. (Dkt. No. 120.) After a review of the request and opposition, the Court GRANTS Defendant's request to file a reply.

Based on the reasoning below, the Court DENIES Defendant's *ex parte* motion for leave to file a counterclaim and continuance of case management order dates.

**Factual Background**

Plaintiff La Jolla Spa operated a high-end medical spa and boutique in downtown La Jolla and Plaintiff Fay Avenue Properties, LLC ("Fay Ave Property") owned the two story building where La Jolla Spa was located. Both Plaintiffs were named insured under an insurance policy issued by Travelers Property Casualty Company of America ("Travelers"). Dianne York is the President of La Jolla Spa and sole member of Fay Avenue Properties.

Plaintiff occupied the first floor of 7630 Fay Avenue, La Jolla, California where it operated a spa and retail shop. The second floor of the Fay Ave Property was partially occupied by the medical practice of York's former husband, Dr. Mitchell Goldman ("Goldman"). On or about September 18, 2009, Goldman vacated the Fay Ave Property, and moved his medical practice and equipment to another location, in accordance with the terms of York's and Goldman's divorce judgment. Plaintiff contends that Goldman, and/or persons acting on his behalf, stole medical and office equipment from the Fay Ave Property.

On or about January 26, 2010, Plaintiff filed an insurance claim with Defendant where she alleged that her husband stole property from the insured location. On March 29, 2010, Plaintiffs submitted an insurance claim spreadsheet, detailing roughly 230 line items totaling $2.8 million in damages as a result of the claimed loss. (Dkt. No. 116-1, Agness Decl., Ex. 2.) At an August 25, 2010 Examination Under Oath ("EUO"), Ms. York testified that the tangible items listed in the March 29, 2010 claim inventory was prepared by Karen Wise, the CFO. (Id., Agness Decl., Ex. 3, Aug. 25, 2010 EUO at 12:8-22; 13:4-14:4.) York and Wise "walked through the entire building room by room, and we itemized everything that was in that building" and the list is what we were asked to provide by Defendant. (Id. at 13:7-14:4.)

On April 29, 2011, Plaintiff submitted a revised claim inventory, detailing over 1,000 line items. (Id., Agness Decl., Ex. 4.) When asked on May 4, 2011 by email if the entire inventory being claimed was wrongfully damaged or stolen by Dr. Goldman,

York responded "Yes." (Id., Agness Decl., Ex. 5.)

Thereafter, on June 2, 2011, Plaintiffs submitted another revised inventory including over 1,100 line items, totaling over $13 million in damages. (Id., Agness Decl., Ex. 6.) During York's fourth EUO session on July 12, 2011, York stated that the inventory list contained all physical property for which she was making a claim and all these items were owned by Plaintiffs as of September 18, 2009. (Id., Agness Decl., Ex. 7, June 2, 2011 EOU at 373:4-373:3.) On December 20, 2011, Defendant denied Plaintiff's claim. (Id., Agness Decl., Ex. 8.)

Defendant argues that York directly contradicted pre-litigation testimony given under oath as well as other material representations made during the investigation of the insurance claim. At the recent deposition of York, in July 2014, she testified that the items identified in the June 2, 2011 inventory reflected an inventory of all items in the entire building on September 18, 2009. (Dkt. No. 116-1, Agness Decl., Ex. 10, York Depo., 7/9/14 at 272:8-273:1.) She stated that Dr. Goldman did not take all items in the June 2, 2011 inventory and that some of the items were rightfully taken. (Id., Ex. 10, York Depo. 7/9/14 at 274:24-275:15; 7/10/14 at 57:11-17.) Moreover, during the deposition, York also testified that the Vitaphenol and Obagi products that had been claimed as stolen during the claim process were not stolen by Goldman. (Id., Ex. 10, York Depo., 7/10/14 at 56:14-25; 75:1-7.) Defendant contends that these affirmative statements that contradict pre-litigation testimony now support a cause of action for fraud against LJS.

**A.   Legal Standard**

Federal Rule of Civil Procedure 15 and 16 govern the amendment of pleadings. The Ninth Circuit has explained that once a pretrial schedule order has been filed which sets a deadline for amending pleadings, a party must first show "good cause" for amendment under Rule 16(b)[1], and then if good cause is shown, the party must

---

[1] Rule 16(b) provides, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

demonstrate that amendment would be proper under Rule 15(a). Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1991); Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "If [the Court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Jackson, 186 F.R.D. at 607 (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)).

Rule 16(b)'s good cause standard considers the diligence of the party seeking the amendment. Johnson, 975 F.2d at 609. If a party acted diligently but still cannot reasonably meet the scheduling deadlines, the court may modify the scheduling order. Id. Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Id. One district court noted that the Court may look at the following factors: "(1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16[O]rder; (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the movant] was diligent in seeking amendment of the Rule 16[O]rder, once it became apparent that [the movant] could not comply with the [O]rder." Jackson, 186 F.R.D. at 608.

On August 2, 2013, a case management scheduling order pursuant to Rule 16 was filed. (Dkt. No. 85.) The deadline to file any motion to amend pleadings passed on September 6, 2013. (Id.) The fact discovery deadline recently passed on July 20, 2014 with expert discovery closing on September 25, 2014. (Id.) A final pretrial conference is currently set for November 15, 2014. (Id.)

Since the deadline set in the original scheduling order to amend the pleadings has passed, the Court must first determine whether Defendant has shown "good cause"

to modify the scheduling order.  See Johnson, 975 F.2d at 608-09.

The Court concludes that Defendant has not demonstrated good cause to modify the scheduling order to grant it leave to file a counterclaim.  While the parties raise numerous portions of the record to support their positions, and whether Travelers knew whether the inventory lists were all items claimed to have been taken by Goldman was accurate or not, the Court concludes the denial letter provides a comprehensive analysis as to what Travelers knew in December 2011.

The denial letter dated December 20, 2011 demonstrates that Travelers knew that Plaintiff had misrepresented or misstated or misunderstood the items on the inventory lists.  In a detailed 22 page single-spaced letter, Defendant denied Plaintiff's claim for numerous reasons, including misrepresentations by York during the course of the Travelers' investigation.  (Dkt. No. 116-1, Agness Decl., Ex. 8.)  In fact, a section entitled "Misrepresentations Disclosed by Travelers' Investigation" provides examples of misrepresentations and include: "The Claim for All Equipment on the Second Floor."  (Id. at 123-24.)  Travelers noted that the stipulated marital dissolution awarded Goldman, all of the equipment on the second floor except for equipment in the surgical suite which Plaintiff acknowledged in a September 23, 2009 declaration in the divorce proceedings; however, the claim inventory lists equipment from nearly every room on the second floor "even though most of those items were clearly not awarded to you."  (Id. at 123.)  "You submitted those claims despite your admission under penalty of perjury in a different proceeding that Dr. Goldman was allowed to take all of the non-surgical suite equipment on the second floor."  (Id.)  In sum, Travelers stated "your clear intent, expressed under penalty of perjury is for Traverlers to pay for items which you conceded in a different proceedings (and which the divorce judgement confirms) were awarded to Dr. Goldman.  (Id. at 124.)

In addition, as to "The Vitaphenol Claim", Defendant noted that York claimed that Vitaphenol was stolen by Dr. Goldman and sought $1.5 million as listed in the inventory list.  (Id.)  However, Defendant later learned and York admitted in her

examination that Vitaphenol was sold by the court appointed receiver on behalf of her company. (Id.) Moreover, in her July 22, 2011 declaration submitted to the federal bankruptcy court, she stated that Vitaphenol was sold in October 2008 for $1.5 million, which is the amount sought from Travelers. (Id.) As to "The Obagi Claim", the inventory listed the product value at $96,000; however, in the January 8, 2010 declaration in the divorce proceedings, York stated that Dr. Goldman was authorized to remove the Obagi products. (Id. at 125.)

This demonstrates that as of December 20, 2011, Travelers had notice that the inventory lists did not constitute the total items taken by Goldman and that, according to its investigation, Plaintiff had misrepresented that items contained in the inventory claim lists were taken by Goldman. Since Travelers was on notice since the beginning of the case about the potential misrepresentation or fraud by Plaintiff, it should have diligently sought her deposition and any other discovery to determine whether a counterclaim should be alleged.[2] As Plaintiff points out, while Travelers listed York as the first witness in its August 2012 initial disclosures, it did not notice her deposition until May 2014 and due to scheduling, her deposition did not take place until July 9 and 10, 2014, two weeks prior to the fact discovery deadline. Moreover, in its answer filed on March 26, 2012, Defendant asserts an affirmative defense of "Policy Terms, Conditions and Exclusion" concerning "Concealment, Misrepresentation or Fraud" where the policy provisions it references are the same as alleged in the proposed counterclaim. (Dkt. Nos. 32; 116 at 15.) These facts reveal that Travelers has not been proceeding with diligence in this case.

Therefore, the Court concludes that Travelers has not demonstrated diligence and DENIES Defendant's motion to modify the scheduling order. Since the Court declines to exercise its discretion to modify its Rule 16 Scheduling Order, an analysis under

---

[2] The Court also questions why a counterclaim was not filed prior to the scheduling order amendment deadline based on the fact that Travelers, at that time, was aware that Plaintiff allegedly made numerous misrepresentations during the investigation. Carelessness provides no reason for a grant of relief under Rule 16. See Johnson, 975 F.2d at 609.

Rule 15(a) is not necessary. See Sosa, 133 F.3d at 1419 (holding that the Court need not evaluate Rule 15(a) unless the movant first meets the "good cause" requirement of Rule 16); see also MMMT Holdings Corp. v NSGI Holdings, Inc., No. C12-1570 RSL, 2014 WL 2573290, at *4 (W.D. Wash June 9, 2014) (because plaintiff cannot satisfy Rule 16(b), it is not necessary to evaluate the plaintiff's motion to amend under Rule 15).

### Conclusion

Based on the above, the Court DENIES Defendant's *ex parte* motion for leave to file a counterclaim and continuing dates in the scheduling order.

IT IS SO ORDERED.

DATED: July 24, 2014

*[signature]*
HON. GONZALO P. CURIEL
United States District Judge