1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| FAY AVENUE PROPERTIES, LLC., LA JOLLA SPA MD, INC., | CASE NO. 11cv2389-GPC(WVG) |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION** |
| vs. | [Dkt. No. 143.] |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; AND DOES 1 through 100, inclusive, | |
| Defendant. | |

11
12
13
14
15
16
17
18
19
20
21
22

        Before the Court is Defendant's motion for reconsideration of the Court's order
denying Defendant's motion for summary judgment filed on September 23, 2014.
(Dkt. No. 143.)  Plaintiff filed an opposition and Defendant filed a reply.  (Dkt. Nos.
152, 154.)  After a review of the briefs, supporting documentation, and the applicable
law, the Court DENIES Defendant's motion for reconsideration.

23

**Background**

24
25
26
27
28

        Plaintiffs Fay Avenue Properties, LLC ("Fay") and La Jolla Spa MD, Inc.
("LJS") filed a complaint against Defendant Travelers Property Casualty Company of
America ("Travelers") on August 26, 2011.  (Dkt. No. 1.)  The Complaint alleges
causes of action for breach of contract; breach of the implied covenant of good faith
and fair dealing; fraudulent concealment; and negligence for Defendant's failure to pay

1  under the insurance policy.  (Id.)  Plaintiff also seeks to recover punitive damages.

2  (Id.)

3        On February 28, 2012, District Judge Sabraw granted Defendant's motion to

4  dismiss the fraudulent concealment and negligence causes of action. (Dkt. No. 31.)

5  The case was transferred to the undersigned judge on October 12, 2012. (Dkt. No. 48.)

6        On September 23, 2014, the Court denied Defendant's motion for summary

7  judgment on the two remaining causes of action for breach of contract and breach of

8  the implied covenant of good faith and fair dealing.  (Dkt. No. 139.)  The Court

9  concluded that there are genuine issues of material fact whether the insurance policy

10  was voided based on Plaintiff's failure to comply with the Examination Under Oath

11  ("EUO") condition and a violation of the concealment, misrepresentation and fraud

12  provision in the insurance policy.  (Id.)  On October 20, 2014, the Court granted

13  Plaintiff Fay and Defendant Travelers' joint motion to dismiss with prejudice. (Dkt.

14  No. 145.)

15                                **Discussion**

16        Defendant LJS moves for reconsideration pursuant to Federal Rule of Civil

17  Procedure ("Rule") 54(b) arguing that the Court committed clear error. Plaintiff

18  opposes.

19        A motion for reconsideration may be brought under Rule 54(b) which provides

20  that any order which does not terminate the case is subject to revision at any time

21  before the entry of judgment.  See Fed. R. Civ. P. 54(b).  "Reconsideration is

22  appropriate if the district court (1) is presented with newly discovered evidence; (2)

23  clear error or the initial decision was manifestly unjust, or (3) if there is an intervening

24  change in controlling law." Sch. Dist. No. 1J, Multnomah County, Or. v. AcandS, Inc.,

25  5 F.3d 1255, 1263 (9th Cir. 1993); see also Ybarra v. McDaniel, 656 F.3d 984, 998 (9th

26  Cir. 2011).

27        In addition, Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration

28  must include an affidavit or certified statement of a party or attorney "setting forth the

material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application." Local Civ. R. 7.1(i)(1).

Clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Smith v. Clark County School Dist., 727 F.3d 950, 955 (9th Cir. 2013) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

The Court has discretion in granting or denying a motion for reconsideration. Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003). A motion for reconsideration should not be granted absent highly unusual circumstances. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (quoting Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). Moreover, a motion for reconsideration "cannot be used to ask the Court to rethink what the Court has already thought through merely because a party disagrees with the Court's decision. Collins v. D.R. Horton, Inc., 252 F. Supp. 2d 936, 938 (D. Az. 2003) (citing United States v. Rezzonico, 32 F. Supp. 2d 1112, 1116 (D. Az.1998)).

**A.    Misrepresentations by Diane York**

Defendant argues that York, on behalf of LJS, stated on at least three occasions, in an email dated May 4, 2011, in a letter dated June 14, 2011, and at the fourth EUO session on July 12, 2011, that the second set of inventory provided around June 2, 2011, constituted inventory stolen by Dr. Goldman which contradicts her belief in April 2011 that the second set of inventories would provide an inventory of the entire

[11cv2389-GPC(WVG)]

1   building.   Defendant already raised these arguments and facts in its motion for
2   summary judgment.   The Court looked at those representations and concluded that
3   while York admitted that conflicting statements were made, at the time, she was
4   "mistaken or confused" due to her inexperience with the claims process. (Dkt. No. 139
5   at 19.) The Court expressed concern as to the numerous false statements made by York
6   to Travelers but on summary judgment, the Court is to view the facts in light most
7   favorable to the non-moving party.  (Id. at 21-22.)   Thus, the Court concluded that
8   there was a genuine issue of material fact whether York knew her statements were false
9   at the time she made them.  Defendant cannot reargue the same arguments presented
10  in its motion for summary judgment.

11          Moreover, Defendant cannot now "raise arguments or present evidence for the
12  first time when they could reasonably have been raised earlier in the litigation."
13  Marlyn Nutraceuticals, Inc, 571 F.3d at 880.  In its reply, Defendant, for the first time
14  cites to a district court case from Massachusetts, Espedito Realty, LLC v. Nat'l Fire
15  Ins. Co. of Hartford, 935 F. Supp. 2d 319, 326 (D. Mass. 2013) for the proposition that
16  "accidental mistakes" are not sufficient to overcome allegations of intentional
17  misrepresentation of material fact under the policy.  Defendant has not demonstrated
18  why this case was not raised at the time of the briefing on summary judgment.  Even
19  if the Court were to consider the case, that case involved misrepresented facts that were
20  "both capable of actual knowledge and actually known to Plaintiff, and misrepresented
21  to Defendant."  Id. at 326.  In this case, there is a genuine issue of material fact as to
22  whether York knew she was making false statements at the time she made them.
23  Therefore, Espedito Realty, LLC does not provide support for Defendant's position on
24  reconsideration.

25          Defendant further argues, even if the Court accepts York's statement that she did
26  not know the March 29, 2010 inventory was a false inventory, Karin Wise, the CFO of
27  LJS, who prepared and submitted the inventory, made a material misrepresentation.
28  However, Defendant fails to demonstrate facts that Wise, even if LJS can be liable for

1   the acts by Wise, knew she was presenting a false inventory at the time it was made.

2       Thus, the Court DENIES Defendant's motion for reconsideration on whether

3   there are genuine issues of material fact as to whether the insurance contract was

4   voided by Plaintiff's alleged violation of the concealment, misrepresentation and fraud

5   provision in the insurance policy.

6   **B.     Dr. Mann's Lease**

7       In the Court's order, it noted that the "alleged denial of a written lease agreement

8   with Dr. Mann during the fourth EUO would be a material false misrepresentation that

9   Plaintiff knew was false at the time it was made." (Dkt. No. 139 at 21.)  However, the

10  transcript of the fourth EUO provided by Defendant did not support Defendant's

11  assertion that York denied the existence of a written lease agreement.  (Id.)  The Court

12  also questioned whether it was provided with a full record on this issue.  (Id.)

13      In its motion for reconsideration, Defendant asserts that the Court had all

14  relevant portions of the fourth EUO and that the omitted portions were not relevant to

15  the issue.[1]  According to Defendant, the excerpts from the fourth EUO "reveal that Ms.

16  York misrepresented the existence of any formalized written agreement with Dr.

17  Mann." (Dkt. No. 143-1 at 15.)  However, the Court concluded that the testimony in

18  the fourth EUO "does not provide a clear indication that York denied the existence of

19  a written lease agreement." (Dkt. No. 139 at 21.)  Since the Court had the complete,

20  relevant portion of the fourth EUO transcript, the Court's ruling does not change.  The

21  transcript to support Defendant's argument does not support the fact that York denied

22  the existence of a written lease agreement sufficient to show a material false

23  misrepresentation.    Accordingly, the Court DENIES Defendant's motion for

24  reconsideration on this issue.

25  **C.     Examinations Under Oath**

26      Defendant argues that the Court's conclusion that there are genuine issues of

27

28      [1]Defendant provides the full excerpt regarding the Mann lease from the fourth
    EUO.

1   material fact whether it was reasonable for Plaintiff to refuse to attend the fifth EUO
2   should be reconsidered.  Plaintiff disagrees.

3        As an initial matter, the Court notes that Defendant raises the same arguments
4   or new arguments it should have raised on its motion for summary judgment which
5   cannot be a basis for a motion for reconsideration.  See Marlyn Nutraceuticals, Inc.,
6   571 F.3d at 880; Collins, 252 F. Supp. 2d at 938.  However, the Court will consider
7   Defendant's arguments.

8        First, Defendant argues that the Court's ruling on the $10,000 claim data
9   expense was error.  In its order, the Court concluded that as to the $10,000 claim data
10  expense, "a question of fact arises as to whether the claim data processing could have
11  been expedited if Plaintiff had been informed of the $10,000 claim data expense which
12  could have eliminated the need for multiple EUOs." (Dkt. No. 139 at 16.)  Erin Farley,
13  the adjuster, revealed at her deposition that the claim data coverage, along with other
14  coverage, was not in the February 22, 2010 letter to York.  The February 22, 2010 letter
15  explained the coverage for business personal property, and Farley testified that the
16  claim data coverage should have been in the letter. (Dkt. No. 128-14, P's Exs., Ex. 17,
17  Farley Depo. at 81:18-83:20.)  Contrary to Defendant's argument, Farley's deposition
18  responses suggested that York was not informed about the claim data benefit and
19  Defendant has not shown that she was aware of the benefit.

20       Defendant further argues that the advance of $250,000 it made in January 2011
21  was more than enough to cover the $10,000 claim data expense.  However, the
22  $250,000 advance payment was against her claimed loss and not to provide any claim
23  data expense coverage.  In Defendant's letter explaining the reason for the advance
24  payment, it was noted that Plaintiff had a $260,000 note that was coming due on
25  January 31 and that is why she requested the advance. (Dkt. No. 123-11, Daza-Luu
26  Decl, Ex. 13 at 187.)  The $250,000 payment does not provide Plaintiff any notice that
27  she is able to use the $10,000 claim data expense to hire a professional to assist in
28  preparing her claim data.

1    Providing an inventory of items that Dr. Goldman took and which items were

2    owned by LJS and what items were owned by Fay Avenue was not an easy task. (Dkt.

3    No. 123-14, Daza-Luu Decl., Ex. 19, EUO Vol. 4 at 538:20-539:19.) Therefore, the

4    Court's conclusion that there is a genuine issue of material fact "whether the claim data

5    processing could have been expedited if Plaintiff had been informed of the $10,000

6    claim data expense which could have eliminated the need for multiple EUOs" was not

7    clear error. (Dkt. No. 139 at 16.)

8    Second, Defendant argues that the Court's conclusion that a "question of fact

9    arises as to whether Travelers had enough information early on to render unnecessary

10   the last EUO" is legally unsound. (Dkt. No. 139 at 16.) It argues that according to the

11   Court's reasoning, "it is okay to make a misrepresentation so long as the legitimate

12   portion of the claim exceeds the applicable policy limits." (Dkt. No. 143-1 at 19.)

13   However, there has been no finding of a misrepresentation; there is a genuine issue of

14   material fact as to the misrepresentations.

15   Morever, questions of fact exist as to whether Defendant was unnecessarily

16   extending the EUOs. After Plaintiff allegedly presented a final inventory on June 2,

17   2011, a fourth EUO was held on July 12, 2011. A full day, 9:40 a.m. to 5:40 p.m., was

18   spent to discuss this "final" inventory. (Dkt. No. 123-14, Daza-Luu Decl., Ex. 19, EUO

19   Vol 4 at 368, 604.) At the end of the session, Plaintiff's attorney expressed his

20   dissatisfaction of not being finished especially since there were a lot of repeated

21   questions and non-relevant questions being asked. (Id. at 602:13-25.) Moreover,

22   based on the evidence before the Court, Defendant should have known that the $13.1

23   million inventory could not have been all items allegedly stolen by Dr. Goldman;

24   therefore, it could have expedited the process instead of discussing each line item of

25   the June 2, 2011 inventory. For example, Defendant received the divorce judgment as

26   of March 2, 2010 which stated that the Obagi product line belonged to Dr. Goldman.

27   However, York included the Obagi product line in the June 2, 2011 inventory.

28   Therefore, Defendant should have known that the June 2, 2011 inventory probably did

1   not contain all alleged items taken by Dr. Goldman.

2          Defendant also presents another case, in its reply, it could have raised in its

3   motion for summary judgment for the proposition that until the insurer completed its

4   investigation, it was reasonable to delay payment.  See Rivera v. Allstate Ins. Co., 100

5   Fed. Appx. 641, at *4 (9th Cir. 2004).  Rivera involved a bad faith standard as opposed

6   to whether it was reasonable for Plaintiff to refuse to attend an EUO.  See Abdelhamid

7   v. Fire Ins. Exchange, 182 Cal. App. 4th 990, 1001 (2010) (whether the insured had a

8   reasonable excuse to refuse an EUO).  Moreover, consideration of this case, submitted

9   for the first time in its reply to its motion for reconsideration, is not proper on a motion

10  for reconsideration.

11         Defendant further argues that the Court's conclusion that there is "question of

12  fact whether Travelers was predisposed to viewing York's claim as a fraudulent one",

13  (Dkt. No. 139 at 17), has no bearing on the "objective reasonableness of the request for

14  an EUO in light of the admitted material misrepresentations by LJS."  (Dkt. No. 154

15  at 10.)  The Court's conclusion was based on a March 23, 2010 email from Travelers

16  Prosecution Coordinator to Farley regarding suspected fraud.  Defendant argues this

17  was required under California law and therefore cannot be used as a basis for LJS' bad

18  faith claim.  As Plaintiff correctly points out, the statement is "*evidence* a jury can

19  consider in determining whether Defendant was predisposed towards a fraud denial that

20  it acted unreasonably in continuing to ask for further EUOs."  (Dkt. No. 152 at 10)

21  (emphasis in original). The fact that there is a possibility of bias of viewing York's

22  claim as a fraudulent one raises a genuine issue of material fact whether it was

23  reasonable for Plaintiff to refuse to attend the fifth EUO.

24         Lastly, Defendant argues that the Court improperly denied summary judgment

25  on the bad faith cause of action and the request for punitive damages based on the same

26  arguments presented on the breach of contract cause of action.  For the same reasons

27  the Court denies Defendant's motion for reconsideration on the breach of contract

28  claims, the Court DENIES Defendant's motion for reconsideration on the bad faith

cause of action and request for punitive damages.

**Conclusion**

Based on the above, the Court DENIES Defendant's motion for reconsideration. The hearing date on Defendant's motion for reconsideration set for December 12, 2014 shall be **vacated**.   The pretrial conference set for December 12, 2014 shall remain.

IT IS SO ORDERED.

DATED:  December 9, 2014

HON. GONZALO P. CURIEL
United States District Judge